ALFONSO BARRON, Plaintiff-Appellee, v. SALLY WARD, Acting Director, Illinois Department of Employment Security, *et al.*, Defendants-Appellants.

First District (3rd Division) No. 86—1630

Opinion filed October 21, 1987.

654

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellants.

Paul B. Marcovitch, Richard M. Wheelock, and Cathleen C. Cohen, all of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

This is an appeal of a judgment of the circuit court of Cook County reversing a decision of the defendant Board of Review (Board) of the Department of Employment Security (Department) upholding

the denial of plaintiff's claim for unemployment compensation benefits. The State defendants contend: (1) an employee who quits merely because he has a continuing personality conflict with a fellow employee is ineligible for unemployment benefits because he voluntarily left his employment without good cause attributable to his employer; (2) to qualify for unemployment compensation benefits an employee must first take affirmative action to alleviate or rectify a personality conflict with a fellow employee before he quits; and (3) the Board's decision was not against the manifest weight of the evidence.

Plaintiff worked as a shipping clerk for defendant Florence Corporation (Florence) from April 16, 1984, until he quit on January 30, 1985. During the first four months of plaintiff's employment, he worked with John Hillaries. Plaintiff, who is Mexican, claimed that during this time, Hillaries would make derogatory remarks about Mexicans in general and plaintiff in particular. In August 1984, plaintiff and Hillaries were involved in an altercation during which Hillaries struck plaintiff in the face, injuring him. As a result, both employees were suspended for a time and, upon their return, Hillaries was transferred to another department. Plaintiff claimed that after the transfer, Hillaries threatened to kill him and would laugh at plaintiff when he would see him in the plant. Plaintiff claimed he did not report these incidents to his supervisors because he was not working directly with Hillaries and because he thought it would be pointless to do so.

On January 30, 1985, Florence decided to transfer Hillaries back to shipping due to a vacancy in the department which required a person who could read and write English. When plaintiff's immediate supervisor informed him Hillaries would be transferred to the shipping department the next day, plaintiff told him he could not, and would not, work with Hillaries. When Florence's traffic manager and plaintiff's union steward were summoned to speak with him, he told them of Hillaries' harassment, that he could not work with Hillaries and that if forced to do so he would have to kill him. The union steward told plaintiff he should not quit but "just stay on and work." The Florence supervisors told plaintiff they had to transfer Hillaries because no other employee could fill the spot and that he would have to work and get along with Hillaries. At the end of his shift, plaintiff told Florence's supervisors and the union steward that he was quitting. Plaintiff never returned to work. Thereafter, plaintiff's union held a grievance meeting and found that plaintiff had voluntarily left his employment.

Plaintiff filed a claim for unemployment benefits with the Illinois

Department of Labor's Unemployment Insurance Division on February 11, 1985. The claims adjudicator denied the claim, ruling that, although plaintiff's reason for leaving was attributable to Florence since it was aware of his working conditions and could have controlled them, plaintiff had not exhausted reasonable alternatives in an effort to correct the situation before leaving. Plaintiff was informed that his claim was denied because he had "voluntarily quit for personal reasons." Plaintiff appealed the denial to the defendant Department's Benefit Appeals Subdivision and the referee affirmed the denial. Plaintiff then appealed to the defendant Board, which also affirmed the denial on the grounds that plaintiff "failed to exhaust all reasonable alternatives before quitting" and "voluntarily left work without good cause attributable to his employer."

Plaintiff filed a complaint for administrative review of the Board's decision and the trial court reversed, stating: "It does appear as though [plaintiff] advised two people in management, and apparently he spoke to the union representative *** about what he should do to avoid working with this man ***."

Defendants first contend that plaintiff is ineligible for unemployment benefits under section 601A of "AN ACT in relation to a system of unemployment insurance" (the Unemployment Insurance Act) because he left work without good cause attributable to his employer. (Ill. Rev. Stat. 1981, ch. 48, par. 431.) They note that various jurisdictions, including Illinois, have adopted a "reasonably prudent person" standard to determine whether "good cause" for leaving employment exists (*Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351; *Gathering v. Review Board of Indiana, Employment Security Division* (Ind. App. 1986), 495 N.E.2d 207; *Meyer v. Skyline Mobile Homes* (1979), 99 Idaho 754, 589 P.2d 89) and assert that plaintiff did not meet this standard. They also note that "good cause" to leave employment has been defined as such cause as results from circumstances producing real and substantial pressure to terminate employment and which would compel a reasonable man to act in the same manner. (*Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351.) They further note that whether an employee acts as a reasonable person is a factual determination for the administrative agency (*Komarec v. Department of Labor* (1986), 144 Ill. App. 3d 1105, 494 N.E.2d 1257) and that the function of a reviewing court is merely to determine whether the agency's decision is against the manifest weight of the evidence (*Eastman Kodak Co. v. Fair Employment Practices Comm'n* (1981), 86 Ill. 2d 60, 426 N.E.2d 877).

Defendants assert that the Board's determination that plaintiff

left work without good cause is not against the manifest weight of the evidence. They cite cases holding that an employee who quits his job because of a conflict with co-workers does so without "good cause." (*Larson v. Department of Economic Security* (Minn. 1979), 281 N.W.2d 667; *Green v. Unemployment Compensation Board of Review* (1953), 174 Pa. Super. 286, 101 A.2d 119; *Employment Securities Comm'n v. Bryant* (Wyo. 1985), 704 P.2d 1311.) From *Larson*, they conclude that plaintiff did not act as a reasonable employee and lacked good cause to leave because he failed to inform management of Hillaries' continuing harassment in order to allow it an opportunity to solve the problem between them. They also rely on this failure to argue that, even if plaintiff had good cause to leave, it was attributable to Hillaries, not Florence, since it did not know of the continuing harassment and was not given an opportunity to rectify the problem.

Next, defendants note that an employee must make reasonable efforts to resolve conflicts arising from his employment before he can be found to have left with "good cause" and thus be eligible for unemployment benefits. (*Davis v. Board of Review* (1984), 125 Ill. App. 3d 67, 465 N.E.2d 576; *Jones v. Board of Review* (1985), 136 Ill. App. 3d 64, 482 N.E.2d 1131; *Employment Security Comm'n v. Bryant* (Wyo. 1985), 704 P.2d 1311; *Larson v. Department of Economic Security* (Minn. 1979), 281 N.W.2d 667.) They assert that, in contrast to the plaintiffs in *Davis* and *Jones*, who took substantial steps to resolve their conflicts including telling management of their problems, the only step taken by plaintiff here was to quit. Defendants assert that plaintiff's failure to file a union grievance also requires a finding that he left without good cause attributable to Florence. They argue that an employee must first exhaust all alternatives less drastic than leaving before he may be found to have left with good cause. They conclude that allowing plaintiff unemployment benefits endorses an employee's leaving employment while ignoring established company and union procedures and defeats the purpose behind the Unemployment Insurance Act, *i.e.*, to benefit only those who are faultless in becoming unemployed.

Plaintiff first responds that the standard of review applicable here is that where facts are undisputed, their legal effect becomes a question of law, the determination of which by the administrative agency does not bind a reviewing court. He asserts that, as a matter of law, when a claimant is assaulted and threatened by a co-worker and the employer refuses to rectify the problem despite numerous efforts by the employee to resolve the conflict, the employee has good cause attributable to the employer to leave work. Moreover, he asserts, the

Board's finding that he did not file a union grievance is contrary to the manifest weight of the evidence, since Florence's representative admitted at the administrative hearing that he did file a grievance and that the union held a grievance meeting.

He maintains he left with good cause because he had a genuine and reasonable fear for his personal safety. In support, he cites the Board's finding that he "may have been faced with an intolerable situation because of being required to work with" Hillaries. He cites cases holding that an employee has good cause for leaving his employment where he has a genuine fear for his safety due to acts of a fellow employee (*Taylor v. Board of Review* (1984), 20 Ohio App. 3d 297, 485 N.E.2d 827; *Condo v. Board of Review* (1978), 158 N.J. Super. 172, 385 A.2d 920) or has no such fear but suffers nonphysical harassment (*City of Florrisant v. Labor & Industrial Relations Comm'n* (Mo. App. 1981), 613 S.W.2d 713; *Richards v. Daniels* (1981), 1 Ark. App. 331, 615 S.W.2d 399).

Plaintiff further contends that his good cause to leave was attributable to his employer. He asserts that, for such to be the case, the Unemployment Insurance Act only requires that the employee's attempts to resolve the conflict arising from his employment be unsuccessful (*Davis v. Board of Review* (1984), 125 Ill. App. 3d 67, 73, 465 N.E.2d 576; *Jones v. Board of Review* (1986), 136 Ill. App. 3d 64, 67, 482 N.E.2d 1131), not that the employer's actions be unreasonable (*Davis v. Board of Review* (1984), 125 Ill. App. 3d 67, 71, 465 N.E.2d 576). He asserts he satisfied this standard and, specifically, that his failure to inform management of Hillaries' continuing harassment was reasonable since they had been separated. He further asserts that he did inform management thereof when necessary, *i.e.*, when it decided to transfer Hillaries back to plaintiff's department.

Plaintiff also asserts that, while an employee must take affirmative steps to resolve conflicts before leaving his employment, he is not expected to remain on the job until an actual assault occurs where he has a genuine fear of assault by a co-worker. (*Taylor v. Board of Review* (1984), 20 Ohio App. 3d 297, 485 N.E.2d 827; *Coleman v. Employment Security Department* (1980), 25 Wash. App. 405, 607 P.2d 1231.) Rather, he argues, the employer's refusal or inability to correct the problem gives the employee good cause attributable to the employer to leave work. (*Condo v. Board of Review* (1978), 158 N.J. Super. 172, 385 A.2d 920; *Hussa v. Employment Security Department* (1983), 34 Wash. App. 857, 664 P.2d 1286.) He concludes that, because Florence did not cancel its decision to transfer Hillaries, he could only either stay and expose himself to a potential assault or leave voluntar-

ily. As such, he concludes, his decision to leave was both reasonable and attributable to Florence.

OPINION

■■■ The Board affirmed the denial of unemployment benefits to plaintiff, stating:

> "Although the claimant may have been faced with an intolerable situation because of being required to work with the co-worker, he chose to resolve his problem by simply quitting, rather than followed [*sic*] established union grievance procedures or seeking a transfer. The claimant failed to exhausted [*sic*] all reasonable alternatives before quitting.
>
> Accordingly, we conclude that [he] voluntarily left work without good cause attributable to the employer ***."

Findings and conclusions of an administrative agency "shall be held to be *prima facie* true and correct" under section 3—110 of the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—110). "Our duty in an administrative review case is precisely the same as that of the circuit court: to examine the entire record *** [and determine] whether *** the findings and decision of the administrative agency are against the manifest weight of the evidence." (*Derringer v. Illinois Civil Service Comm'n* (1978), 66 Ill. App. 3d 239, 241, 383 N.E.2d 771.) Specifically, we must determine whether a conclusion opposite to the Board's that plaintiff failed to exhaust all reasonable alternatives in resolving the problem with his employment before he quit is clearly evident from the record. (*Thompson v. Board of Review* (1983), 120 Ill. App. 3d 1, 5, 457 N.E.2d 512.) In so doing, we cannot reweigh the evidence but may only determine whether the Board's decision was just and reasonable in light of the evidence presented. (120 Ill. App. 3d 1, 4-5, 457 N.E.2d 512.) However, our review also extends to all questions of law and fact presented by the record. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) Plaintiff is correct that we are not bound by the Board's determination of questions of law (*Chemetco, Inc. v. Pollution Control Board* (1986), 140 Ill. App. 3d 283, 488 N.E.2d 639) and that the legal effect of undisputed facts is such a question (*Lindsey v. Edgar* (1984), 129 Ill. App. 3d 718, 473 N.E.2d 92). Judged by these standards, the record in this case reveals that the Board's final administrative decision was erroneous.

As a factual matter, that decision was not just and reasonable in light of all the evidence since a contrary conclusion is clearly evident from the record. Moreover, the rule implicitly established by the Board's decision, *i.e.*, that an employee must follow established union

grievance procedures or seek a transfer before he can be found to have exhausted all reasonable alternatives to resolving his employment problems and, thus, to have left his employment with good cause attributable to his employer, is not supportable as a conclusion of law.

Preliminarily, the two cases on which defendants largely rely, *Larson v. Department of Economic Security* (Minn. 1979), 281 N.W.2d 667, and *Green v. Unemployment Compensation Board of Review* (1953), 174 Pa. Super. 286, 101 A.2d 119, are distinguishable and, thus, not controlling.

In *Larson*, the plaintiff's supervisor told plaintiff to notify him if the abuse from co-workers, of which plaintiff had complained, continued. The plaintiff quit without informing his supervisor that the abuse had continued. The record reflected that plaintiff quit because the work was too difficult. The administrative tribunal found that plaintiff had quit without good cause attributable to the employer based on his: (1) having quit without notice or explanation; (2) failure to inform his supervisor of the continued abuse although he knew he should have informed him of it; and (3) his failure to report to work or contact his employer for four days. The court affirmed this determination, stating:

> "[O]nce [plaintiff] was provided with the expectation of assistance from his employer in eliminating his alleged fear of harm from a co-worker, the burden was on him to fully apprise the employer of the continuing facts giving rise to that fear. Without this full knowledge, it was reasonable for the employer to assume the problem had been corrected.
>
> *** [Plaintiff] had a duty to inform the employer *** to allow [it] the opportunity to correct the situation and *** in the absence of this information, the employer should not be charged with having caused [plaintiff's] unemployment." *Larson v. Department of Economic Security* (Minn. 1979), 281 N.W.2d 667, 669.

Defendants conclude from *Larson* that plaintiff did not act as a reasonable employee in failing to notify his employer of the continuing abuse from his co-worker, Hillaries. However, they ignore that, unlike Larson, plaintiff here did not quit because of this continuing abuse but because of Florence's decision to transfer Hillaries back to the shipping department despite his protestations that he could not work with him. Moreover, Florence was not, unlike Larson's employer, completely without notice of the reason for plaintiff's decision to quit at the time that he quit nor without an opportunity to rectify the situa-

tion. Rather, it knew that plaintiff felt strongly that he could not work with Hillaries and could have done something about it but chose to do nothing except tell plaintiff he would "have to" work with Hillaries.

In *Green*, a co-worker struck the plaintiff after they had disagreed as to the manner in which work was being performed. Both men were later called to a supervisor's office and were asked to shake hands and make up. Plaintiff refused to do so and quit instead. The court noted that, to constitute good cause to leave employment, an employee's conduct must meet standards of ordinary common sense and prudence and he must be compelled to quit by necessitous circumstances. It then found that the plaintiff did not have good cause to quit because, *inter alia*, he did not suffer any injury as a result of being struck, only his feelings were hurt, and he could have continued his employment without undue hardship. (*Green v. Unemployment Compensation Board of Review* (1953), 174 Pa. Super. 286, 289, 101 A.2d 119, 120.) *Green* is inapposite because it can hardly be said here that plaintiff could have continued his employment without undue hardship given the potential for trouble between him and Hillaries posed by the latter's transfer back to shipping. Moreover, Hillaries' conduct went far beyond a co-worker's distasteful character or habit, which the court in *Green* noted was insufficient to constitute good cause to quit. (174 Pa. Super. at 290, 101 A.2d at 120-21.) Finally, unlike the situation in *Green*, the conflict here was not work-related, *i.e.*, it did not arise from a difference between the two men over the manner in which work was being done.

In arguing that the conflict between plaintiff and Hillaries was not attributable to Florence, even if it was good cause for plaintiff's quitting, defendants incorrectly focus on this conflict. The actual cause of plaintiff's decision to quit was, instead, Florence's decision to transfer Hillaries back to plaintiff's department. This cause is attributable to Florence. In arguing that, if plaintiff had told his supervisors or his union about the constant harassment, something could have been done, defendants ignore that plaintiff had no reason to complain of the abuse since he and Hillaries were no longer working together. Moreover, when plaintiff did have reason to complain, *i.e.*, upon learning that Florence was going to transfer Hillaries, Florence and his union refused to do anything to alleviate or rectify the problem. Instead, they simply told plaintiff he "had to work" with Hillaries.

Defendants also contend plaintiff did not fulfill his duty to take affirmative action to avoid or rectify the personality conflict before he

quit but, instead, did nothing. Specifically, they rely on plaintiff's failure to inform management about Hillaries' continued abuse. As already noted, however, this failure is irrelevant to whether plaintiff had good cause to quit when Florence refused to cancel Hillaries' transfer. Moreover, plaintiff and defendants agree that plaintiff (1) met with his supervisors and his union steward when he learned that Hillaries was being transferred; and (2) told them: (a) he could not work with him; (b) if forced to do so he would have to kill him; and (c) therefore, he was going to quit. These steps satisfied plaintiff's obligation to make reasonable efforts to resolve conflicts arising from his employment before quitting (*Davis v. Board of Review* (1984), 125 Ill. App. 3d 64, 465 N.E.2d 576) and case law supports this conclusion.

In *Jones v. Board of Review* (1985), 136 Ill. App. 3d 64, 482 N.E.2d 1131, the plaintiff cited unreasonable changes in his job duties as his good cause for quitting. After noting the above-stated rule, the court stated that the plaintiff's complaint to his supervisors was a reasonable effort to correct the problem and there was no need for him to repeat his complaint because he had been told he had to complete the assigned duties. (136 Ill. App. 3d 64, 67, 482 N.E.2d 1131.) In *Noor v. Agsalud* (1981), 2 Hawaii App. 560, 634 P.2d 1058, the court stated that an employee has a duty to try reasonable alternatives to solve his problems with his employment before quitting and that they would at least include "consulting the employer and attempting to find some *** solution to the problems." (2 Hawaii App. 560, 563, 634 P.2d 1058, 1060.) The court affirmed the denial of unemployment benefits because "no such attempt was made by" the plaintiff before quitting. (2 Hawaii App. at 563, 634 P.2d at 1060.) In *Condo v. Board of Review* (1978), 158 N.J. Super. 172, 385 A.2d 920, the court held, *inter alia*, that the failure to take additional steps beyond complaining to his supervisor of a co-worker's threats of physical violence did not disqualify the plaintiff from receiving unemployment benefits. The court stated that: (1) plaintiff's responsibility was merely to do what was necessary and reasonable to remain employed; (2) he did not have to do everything possible to maintain the employment relation, including exposing himself to the risk of bodily harm from his co-worker; and (3) his failure to complain further after meeting with his supervisor did not, alone, disqualify him from benefits or prove that he quit for a reason insufficient to constitute good cause attributable to the employer. 158 N.J. Super. at 175-76, 385 A.2d at 922.

Coming to the crux of this case, defendants argue that plaintiff failed to file a union grievance and that this failure requires a finding

that he took insufficient affirmative steps to rectify the problem and thus that he lacked good cause attributable to his employer to leave work. Even if we were to conclude that the Board's finding that plaintiff did not file a union grievance was not against the manifest weight of the evidence, the law does not support the rule contended for by defendants.

Since plaintiff's failure to inform his employer of Hillaries' continued abuse is irrelevant to whether he later had good cause to quit, his failure to file a union grievance, standing alone, does not require a finding that plaintiff lacked such cause. *Glennen v. Employment Division* (1976), 25 Or. App. 593, 549 P.2d 1288, the only case cited by defendant for this proposition, does not so hold. Rather, in *Glennen*, the plaintiff's failure to file a union grievance was but one factor in the court's determination that he quit without good cause. The court noted that: (1) in order to have good cause to quit an employee must indicate an effort to work out the problems unless he can show that such effort would be futile; (2) before quitting, plaintiff did not: (a) wait until her supervisor returned from vacation; (b) file a union grievance; or (c) contact her employer during her suspension or afterwards to try to work out the situation. The court affirmed the denial of benefits "[u]nder these circumstances." (25 Or. App. at ____, 549 P.2d at 1289.) In *Aschenbrenner v. Employment Division* (1977), 29 Or. App. 345, 563 P.2d 757, the court observed that good cause to quit is such cause as would compel a reasonably prudent person to quit under similar circumstances. It held, under the facts, that a reasonably prudent employee would have, *inter alia*, endeavored to resolve his work grievance with the plant manager *or* followed the union grievance procedures before quitting. The court concluded that the plaintiff's failure to make sufficient efforts to present his grievance to his superiors and to show that such actions would have been futile justified the conclusion that he quit without good cause. 29 Or. App. at ____, 563 P.2d at 759.

■ Thus, plaintiff complied with the requirements of *Jones, Noor, Condo* and *Aschenbrenner* to take affirmative action to attempt to avoid, alleviate, or rectify the problem in his employment. And *Glennen* does not support the Board's conclusion of law that he was required to file a union grievance or seek a transfer before he could be found to have exhausted all reasonable alternatives to leaving work and thus to have left with good cause attributable to Florence. That is, there is no *per se* rule that an employee must follow established union grievance procedures or seek a transfer in attempting to solve his employment problems before he may be found to have quit with

good cause attributable to his employer.

Finally, case law supports the conclusion that the cause which plaintiff had for leaving his employment and which was attributable to his employer was also a "good" cause.

In *Taylor v. Board of Review* (1984), 20 Ohio App. 3d 297, 485 N.E.2d 827, the court held that a reasonable fear for one's personal safety was a proper reason to quit work. The court stated, "An employee cannot be expected to remain on the job until an actual physical assault [occurs]," and concluded that a co-worker's threats of physical abuse constituted just cause to quit where he had previously beat the plaintiff and had threatened to beat him again. (20 Ohio App. 3d at 299, 485 N.E.2d at 829.) In *Coleman v. Employment Security Department* (1980), 25 Wash. App. 405, 408, 607 P.2d 1231, 1233, the court held that a co-worker's threats of physical violence, from which the plaintiff could reasonably conclude that her personal safety was endangered and which inculcated a genuine fear in her, were a good cause for leaving her employment. (Accord *Condo v. Board of Review* (1978), 158 N.J. Super. 172, 385 A.2d 920.) In *Employment Security Comm'n v. Bryant* (Wyo. 1985), 704 P.2d 1311, Bryant was involved in an altercation with a co-worker, left work immediately after the incident, and returned 90 minutes later with a letter of resignation. In finding that Bryant was not eligible for unemployment benefits because he quit voluntarily without good cause, the court stated:

> "An employee is not justified in quitting his job because of a *minor, isolated* confrontation with a fellow employee. This is particularly true if the abused employee *does not have reason to believe that further abuse will result* if he stays on the job. An aggrieved employee has a duty to report the abuse to his employer and cooperate in some common-sense action to eliminate the problem. [Citations.]
>
> The general rule indicated above would not apply if an employee were seriously injured, *had a genuine fear of assault* if he returned to work, *had good reason to believe that attempts to work out the problem would be futile*, or attempt to stop the abuse had failed." (Emphasis added.) 704 P.2d at 1316.

These cases support the conclusion that plaintiff's stated reason for not wanting to work with Hillaries, *i.e.*, because he could not get along with him in view of their prior altercation and his continued abuse of plaintiff, was reasonable and that Florence's refusal to keep him and Hillaries apart constituted good cause attributable to Florence to leave his employment.

Equally as important, under the facts and circumstances of this

case, the Board's determination that plaintiff failed to exhaust all reasonable alternatives to resolve his problem and, instead, "simply quit" is against the manifest weight of the evidence. A contrary conclusion is clearly evident from the record. In meeting with his supervisors and union steward, informing them that he could not work with Hillaries and quitting after being told that he would "have to" work and get along with him, plaintiff acted reasonably under the circumstances. (*Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 477 N.E.2d 1351.) That was all the law requires of him. He need not have waited to file a union grievance and risk another altercation with Hillaries. (*Condo v. Board of Review* (1978), 158 N.J. Super. 172, 385 A.2d 920; *Taylor v. Board of Review* (1984), 20 Ohio App. 3d 297, 485 N.E.2d 827.) Since his union steward was present at the meeting, plaintiff could reasonably have concluded that a union grievance would have been futile. As such, there was no need that he repeat his objections to Hillaries' transfer. *Jones v. Board of Review* (1985), 136 Ill. App. 3d 64, 482 N.E.2d 1131; *Employment Security Comm'n v. Bryant* (Wyo. 1985), 704 P.2d 1311.

For all of the foregoing reasons, the judgment of the circuit court of Cook County reversing the decision of the Board of Review of the Department of Employment Security is affirmed.

Affirmed.

McNAMARA, P.J., and RIZZI, J., concur.