MARY PEARSON, Plaintiff-Appellee, v. BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellants.

First District (6th Division) No. 1—89—1861

Opinion filed February 23, 1990.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Tanya Solov, Assistant Attorney General, of Chicago, of counsel), for appellants.

Legal Assistance Foundation, of Chicago (Timothy J. Hufman, Derrick M. Ford, and James O. Latturner, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
Claimant, Mary Pearson, sought unemployment compensation fol-

lowing her discharge from employment with Illinois Bell Telephone Company. A claims adjudicator denied the request for benefits on the ground that claimant voluntarily quit her job when she did not pay her union dues. After a hearing, a referee agreed, finding claimant ineligible for benefits. On review, defendant, Board of Review of the Department of Employment Security (Board), affirmed the referee's determination. The circuit court of Cook County reversed the Board's decision, finding that the Board's finding of voluntary termination was contrary to law. The Board appeals, contending that it properly found that claimant voluntarily terminated the employment. Since few of the facts are in dispute, some of the facts will be contained in our analysis.

Claimant worked as an installer of telephones and cables for Illinois Bell. Pursuant to a union contract, claimant was required to pay union dues. Failure to pay dues entitled the union to direct Illinois Bell to discharge the worker. Claimant's dues were automatically deducted from her paycheck, pursuant to an authorization she signed for the union local, until June 1987, when she was transferred to another job location which fell under the jurisdiction of a different union local. At the time of the transfer, she was not asked to nor did she sign a deduction authorization form for that local.

In August 1987, a union steward informed claimant that her dues had not been paid for three months and that she must pay the $80 by the end of August. At the end of September, claimant agreed to pay the money by October 10. When she did not do so, she was terminated. She turned in her identification card and left.

Claimant thereafter applied for unemployment benefits. An investigation report was apparently completed by the claims adjudicator. That handwritten report contained a statement quoting claimant as saying, "[I]t was just too much of a hassle, I quit." The report concludes that claimant voluntarily quit when she refused to pay the union dues, although she was aware that paying dues was part of the contract of hire. The claims adjudicator's determination form marks a box which finds that claimant's reason for leaving is attributable to the employer because it was aware of the conditions and had the ability to control them. However, "the conditions or acts were not serious violations of the original hiring agreement or did not create a substantially less favorable work situation," and, therefore, "the claimant left work voluntarily without good cause attributable to the employer."

On appeal, a hearing before a referee of the Department of Employment Security, appeals division, was held on December 14, 1987.

Claimant testified that she worked for Illinois Bell for a little over a year. She was unaware that the deductions were not being made in Summer 1987. "[N]o one told me that I had to resign to another union when I transferred out to Arlington Heights."

She had no money because she was supporting herself and three children. Her pay decreased from $7 to $5.98 per hour when she transferred. She spent about $60 per week in commuting to Arlington Heights. She incurred medical expenses when her son was treated at a hospital. In August, she borrowed $729 from the credit union. In September, she was only able to pay half her rent, and she borrowed the remainder of the rent. In September, she also received a disconnection notice from the electric company for nonpayment of her bill.

In September 1987, claimant signed an authorization to automatically deduct dues from her paycheck. Claimant testified that she asked the union steward if she could have the $80 taken from future checks, and he said no. She did not know there was any other union official she could ask about this request and did not know there was a union office on location which she could telephone about the request.

Claimant described the October 10, 1987, termination of her employment. She stated that she did not have the money. At this point, her supervisor said that the union had instructed him to terminate her employment. Claimant turned in her identification card and went home. Claimant also testified that her supervisor offered to lend her the money. She refused because she could never pay it back.

Allan Bergstrom testified that he was the area manager for Illinois Bell. When claimant transferred, she had paid dues through June, and, therefore, the agreement permitted her to work in another local for that period. Illinois Bell does not receive notice of new employees, however, for at least a month after the dues stop. It received notice about claimant in the first week of August and contacted her in the second week of August. Claimant stated that she would send the dues. Bergstrom stated that in October he asked a "temporary supervisor to go out and make sure that she had paid the dues." The supervisor returned and said, "Here's her identification card, she quit." Bergstrom also stated that the temporary supervisor offered to lend claimant the money.

Roland Anderson, a union representative, stated that he talked to claimant about the dues, and she promised to send a check. In October, Bergstrom informed Anderson that claimant had resigned.

The hearing referee determined that claimant was ineligible for benefits because claimant failed to "make an adequate attempt to resolve the payment of the dues prior to leaving work." The Board of

Review of the Department of Employment Security affirmed the referee's finding.

On April 24, 1989, the trial court announced its decision in the administrative appeal. The court relied on the fact that claimant was financially unable to pay her union dues. The court found that under *Barron v. Ward* (1987), 165 Ill. App. 3d 653, 517 N.E.2d 591, a claimant need not exhaust all reasonable alternatives to resolve a conflict arising from employment. The court believed it was "a fiction" to find claimant voluntarily left when "she was in fact discharged for nonpayment of arrearage of union dues from money she did not have." The court concluded that the Board of Review's decision was contrary to law. On June 15, 1989, the trial court entered a written order to that effect.

■■■■ The Illinois Unemployment Insurance Act provides that an individual is ineligible for benefits if she voluntarily left work without good cause attributable to the employer. (Ill. Rev. Stat. 1987, ch. 48, par. 431(A).) Whether or not an individual has "good cause attributable to the employing unit" (Ill. Rev. Stat. 1987, ch. 48, par. 431(A)) for terminating employment is generally a factual issue. (*Collier v. Department of Employment Security* (1987), 157 Ill. App. 3d 988, 510 N.E.2d 623.) The agency's determination is *prima facie* true and will not be disturbed on review unless its findings are contrary to the manifest weight of the evidence. (*Collier v. Department of Employment Security*, 157 Ill. App. 3d 988, 510 N.E.2d 623.) Claimant bears the burden of proving eligibility. *Collier v. Department of Employment Security*, 157 Ill. App. 3d 988, 510 N.E.2d 623.

Claimant maintains that the issue here is a question of law, not fact. The issue is not limited, however, to the legal question of whether *any* employee, under any circumstances, can receive unemployment compensation after being asked to leave for nonpayment of union dues. While many of the facts were not disputed, different inferences can be drawn. Thus, particularly in light of the testimony of Bergstrom and Anderson, we view the issue before us as a question of fact, and we have accordingly given due deference to the findings of the administrative agency. We hold, however, that its findings are against the manifest weight of the evidence.

The Board based its refusal to award employment benefits on findings that claimant was aware that union dues were a condition of employment; that claimant had the burden of paying, even if the employer had an automatic deduction plan; that the employer had no authorization to deduct past dues; and that claimant failed to use the available and reasonable means of remaining employed by borrowing

from her supervisor or arranging for a payment of the arrearage on a deferred plan. The Board concluded that "claimant voluntarily left work without good cause attributable to the employer and therefore was subject to a disqualification of benefits."

The key fact here is that claimant, upon being told that the old authorization did not cover the new union local, signed a new authorization which directed Illinois Bell to "deduct membership dues from my pay for the first payroll of each month." Nothing limited the authorization to future dues. Nothing prevented Illinois Bell from deducting the $80 owed by claimant for past union dues. Thus, the Board is factually incorrect in finding that the employer had no authorization to deduct past dues.

Moreover, Illinois Bell also failed to inform claimant of the need for a new authorization; failed to have a union steward contact her within five days of her transfer, pursuant to the union contract; delayed telling claimant the dues were not being withheld for several months; and failed to offer her any alternative payment plan.

The Board found further that claimant, not Illinois Bell, should have explored other means of remaining employed. The evidence fails to show anything, either in the union contract, in the authorization card, or in the testimony, that tends to show the payment absolutely had to be made in a lump sum. In fact, there is testimony by Illinois Bell to the contrary. The language of the authorization card also implies that past debts can be taken from future checks. Without such evidence of a lump sum requirement, it is not relevant what steps claimant went through to pay the debt in partial payments.

■ Significantly, when analyzing whether good cause for leaving is attributable to the employer, the focus is on the employer's conduct, not that of the employee. (*Barron v. Ward*, 165 Ill. App. 3d 653, 517 N.E.2d 591.) Illinois Bell had a new payroll deduction authorization from claimant as of September 1987. It also had money which it owed to claimant, prior to issuing a paycheck. It merely had to deduct all or part of the $80. The Board argues before us that Illinois Bell had no authority to deduct the previously owed dues, yet Illinois Bell argued in the trial court that if claimant had made it aware of her financial position, other arrangements could have been made.

■ Thus, the Board erroneously focused on claimant's delay in making payment. Yet it ignored the multitude of facts showing that in the same month or two, she took out several loans, could only pay half her rent, received disconnection notices from a utility company, required hospital treatment for herself and her son without medical insurance, was forced to take a cut in pay and to incur increased

costs for commuting. The Board must follow the law requiring it to examine the *employer's* conduct, under the factual circumstances in which it found itself, to determine whether the cause for leaving was attributable to the employer. Illinois Bell need not have been "at fault" under some type of negligence standard. (See *Davis v. Board of Review* (1984), 125 Ill. App. 3d 67, 465 N.E.2d 576.) It is enough that the facts overwhelmingly establish that Illinois Bell's conduct caused the employment termination to occur.

■ We agree with the reasoning in *Hanson v. I.D.S. Properties Management Co.* (1976), 308 Minn. 422, 242 N.W.2d 833, where the court reversed the employment commissioner's denial of unemployment compensation. The employer had failed to withhold a union initiation fee from the employee for seven months; it then demanded the money in five days. The court found that termination was the natural, probable and foreseeable result of the employer's failure to withhold the fee. Moreover, the court pointed out that the statute does not require *all* causative factors to flow from the employer. (*Hanson v. I.D.S. Properties Management Co.*, 308 Minn. at 424, 242 N.W.2d at 835.) Illinois' statute is similar. It demands that the employer not be even *one* causal factor in the termination: "An individual shall be ineligible for benefits for the week in which he has left work voluntarily *without good cause attributable to the employing unit.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 431(A).) It was sufficient that one cause, the employer's conduct in not withholding any part of the dues, proximately caused the termination.

We hold that the trial court properly overturned the Board's decision. The Board's finding that claimant voluntarily terminated her employment is against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LaPORTA, P.J., and RAKOWSKI, J., concur.