LEONARD RUSSELL, Plaintiff-Appellant, v. THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES *et al.*, Defendants-Appellees.— RICHARD GILDEHAUS, Plaintiff-Appellant, v. THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES *et al.*, Defendants-Appellees.

First District (6th Division)   Nos. 1—89—0726, 1—89—1810 cons.

Opinion filed March 30, 1990.

Cornfield & Feldman, of Chicago (Denial I. Koen, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

This is an appeal from separate administrative review actions which affirmed decisions of the defendant Illinois Civil Services Commission (Commission). The Commission had upheld decisions by the defendant Illinois Department of Central Management Services (CMS) to demote plaintiffs Leonard Russell and Richard Gildehaus by reclassifying their job status at the Illinois Department of Corrections (IDOC). Russell and Gildehaus now appeal pursuant to Illinois Supreme Court Rule 301 (107 Ill. 2d R. 301). Gildehaus' motion to consolidate these cases was granted on December 18, 1989.

The sole issue on appeal is whether the rulings of the circuit courts were in error when they affirmed the Commission decisions that CMS properly reclassified the job status of Russell and Gildehaus based on the findings that neither exercised the full responsibilities of a qualified examiner. We affirm.

The undisputed facts are that on June 1, 1982, Gildehaus was hired as a clinical social worker at the Menard adult facility within IDOC and classified as a social worker IV. In June 1985, Russell transferred employment from the Illinois Department of Mental Health (DMH) to the IDOC youth facility at Harrisburg. With this transfer, he was promoted from social worker III to social worker IV. On December 1, 1986, as a result of a general job audit, CMS reclassified Russell to social worker II and Gildehaus to social worker III. This action caused each man's salary rate to drop, although his duties remained the same. Subsequently, both plaintiffs petitioned first CMS and then the Commission for reclassification back to social worker IV.

The position of social worker IV is defined under the authority of the Illinois Personnel Code. The director of personnel proposes rules and qualifications for various positions. (Ill. Rev. Stat. 1987, ch. 127,

pars. 63b108 through 63b110.) The rules define a social worker IV as someone who "[u]nder direction, serves as a qualified examiner; makes clinical diagnoses; signs certificates of admission for involuntary and court-ordered admissions; presents certificate [*sic*] in court regarding the competency of a recipient who may be discharged by the court and testifies regarding same."

Dr. Schaff, chief of mental health for IDOC, testified at the Gildehaus hearing that, as of September 1988, IDOC had employed only two people with the classification of social worker IV.

On January 22, 1988, the Commission held a hearing on Russell's complaint. Russell claimed, and the Commission found, that he met the requirements to be a qualified examiner in that he had a master's degree in social work and three years of supervised, post-graduate clinical experience. (Ill. Rev. Stat. 1987, ch. 91½, pars. 1—122, 1—122.1.) CMS also concedes this point in its appellate brief.

Russell claimed, in addition, that he performed the duties of a social worker IV because he diagnosed inmates, prepared the documents for transfer to DMH, and would testify if a case should go to court. The Commission and CMS agreed that Russell did perform these duties.

CMS claimed, however, that Russell did not perform all the duties of a qualified examiner. The duty of certifying a person for commitment is performed by workers from DMH. During testimony, Russell admitted that after he processed an inmate, the patient would then be observed by workers at DMH. By the time a commitment reached court, Russell's recommendations would be about two weeks old and the court would have to rely on the more recent evaluations by DMH personnel. In fact, no inmates recommended by Russell were committed through a court hearing without additional processing by DMH.

The Commission hearing officer ruled in favor of CMS because a patient is not admitted to a mental health facility directly upon Russell's recommendation but is admitted directly upon the certification of a social worker IV from DMH. Furthermore, if a patient has to be admitted through a court hearing, the court must rely on a recent evaluation and testimony from a DMH worker regardless of whether an IDOC worker certified the patient about two weeks before the hearing and later testified in court. The Commission concluded that Russell's role and that of a social worker IV differ in responsibility. Therefore, the Commission held that CMS properly allocated Russell's position to the class of social worker II.

On September 6, 1988, the Commission heard Gildehaus' complaint. Gildehaus claimed and the hearing officer found that he does

meet the requirements of a qualified examiner and did, in fact, perform many of the job functions of a social worker IV.

CMS's position at trial was, once again, that Gildehaus did not function as a qualified examiner. It argued that Gildehaus had not been involved in preparing a patient for involuntary commitment directly to a DMH facility during his employment at Menard. It further argued that even if Gildehaus did sign commitment papers for a Menard inmate, the patient would then be observed by DMH personnel, who would have to make and sign their own evaluation before a court-ordered commitment.

The Commission held:

> "The Petitioner does not have the authority to place an individual in a mental health institution. *** A patient cannot be admitted based upon the Petitioner's certificate, but a patient can be admitted upon the basis of the Social Worker IV qualified examiner working in the Department of Mental Health and Developmental Disabilities. There is a difference in the responsibility between the identified roles and based upon this difference the Hearing Officer concludes the Respondent has properly allocated Petitioner's position. The appeal is, therefore, denied."

On February 15, 1989, Judge Harold Siegan heard plaintiff Russell's appeal from the Commission's decision and affirmed the decision of the Commission's hearing officer without further comment.

On June 6, 1989, Judge Thomas O'Brien heard similar arguments with respect to plaintiff Gildehaus. The court analyzed statutory provisions and discussed the kind of hearing that might be necessary under the Mental Health and Developmental Disabilities Code. The court then affirmed the Commission's decision.

Trial and appellate review of administrative decisions cover "all questions of law and of fact presented by the entire record before the court." (Ill. Rev. Stat. 1987, ch. 110, par. 3—110; *Barron v. Ward* (1987), 165 Ill. App. 3d 653, 659, 517 N.E.2d 591, 596.) This review involves questions of law and fact with separate standards for each.

■ In reviewing questions of law, courts must defer to an agency's interpretation of its own rules and do not substitute their own judgments unless the agency interpretation is unreasonable. (*Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 148, 405 N.E.2d 1082, 1089.) Courts, however, do exercise independent review over an agency decision which interprets statutory law. (*Carson Pirie Scott & Co. v. Department of Employment Security* (1987), 164 Ill. App. 3d 530, 535, 518 N.E.2d 161, 164.) Courts also review as a matter of law the legal

effect of facts that are not in dispute. *B.F. Gump Co. v. Industrial Comm'n* (1952), 411 Ill. 196, 198, 103 N.E.2d 504, 506; *Barron*, 165 Ill. App. 3d at 659, 517 N.E.2d at 596.

The facts here, uncontested by the defendants, show that Russell and Gildehaus each have the necessary qualifications to be a social worker IV and that each one has also performed many of the duties. The disputed issue is whether or not plaintiffs perform all of the duties of a qualified examiner and are therefore entitled, under present law, to the classification of social worker IV.

The duties of a qualified examiner include executing certificates to be filed in court as part of the process for involuntary commitment to a mental health facility. Ill. Rev. Stat. 1987, ch. 91½, pars. 3—600 through 3—604, 3—700 through 3—703.

Social workers at IDOC, however, cannot directly certify IDOC inmates for nonemergency commitments because the Mental Health and Developmental Disabilities Code dictates that inmate commitments occur "only as provided in the Unified Code of Corrections." (Ill. Rev. Stat. 1987, ch. 91½, par. 3—200.) Under the Unified Code of Corrections, the procedures for involuntary, nonemergency commitments require a petition filed by the Director of the Department of Corrections accompanied by a certificate of a physician. Ill. Rev. Stat. 1987, ch. 38, par. 1003—8—5(c).

These procedures do not limit the right of the director or chief administrator of any prison facility to use the emergency admission procedures of the Mental Health and Developmental Disabilities Code. (Ill. Rev. Stat. 1987, ch. 38, par. 1003—8—5(e).) This provision could suggest that a qualified examiner from IDOC might certify someone for emergency transfer to DMH. (Ill. Rev. Stat. 1987, ch. 91½, par. 3—602.) Alternatively, it could simply signify that IDOC may make emergency transfers even without a certificate, pending examination and certification by DMH workers after the inmate is in DMH custody. Ill. Rev. Stat. 1987, ch. 91½, par. 3—603.

On appeal, Russell and Gildehaus each contend that his status as "qualified examiner" of social worker IV should be based on his training, experience, and duties, not on the fact that he works for IDOC instead of DMH. In support of this contention, they cite three points of law. First, the statute does not restrict examiners only to qualified workers in a DMH facility. (Ill. Rev. Stat. 1987, ch. 91½, pars. 1—122, 1—122.1.) Second, even the qualified examiners working for DMH only certify someone to go to court; the court alone has authority to commit the patient. (Ill. Rev. Stat. 1987, ch. 38, par. 1003—8—5(c); Ill. Rev. Stat. 1987, ch. 91½, par. 3—700; see, *e.g.*, *In re Love*

(1977), 48 Ill. App. 3d 517, 363 N.E.2d 21.) Third, while it is true that a certificate from an IDOC social worker would be too old to serve as the final certificate for commitment in court, if an IDOC social worker signed a certificate, that certificate must be filed with the court along with more recent ones. (Ill. Rev. Stat. 1987, ch. 91½, par. 3—703; *People v. Sansone* (1974), 18 Ill. App. 3d 315, 327-28, 309 N.E.2d 733, 742.) Defendants do not dispute these points.

Defendants' position on appeal is that Russell and Gildehaus cannot function as qualified examiners for two reasons. First, if a worker from IDOC signed a certificate referring someone for involuntary commitment to DMH, his certificate would function merely as a recommendation and not the official certification of a qualified examiner because any certificate either one signed would be more than 72 hours old by the time the court hearing occurred. (Ill. Rev. Stat. 1987, ch. 91½, par. 3—602.) Second, since all nonemergency commitments from IDOC require the certification of a physician, IDOC social workers cannot certify an inmate for nonemergency commitment. (Ill. Rev. Stat. 1987, ch. 91½, par. 3—200; Ill. Rev. Stat. 1987, ch. 38, par. 1003—8—5(c).) Plaintiffs do not dispute these points.

The parties only disagree about whether the responsibility which IDOC workers could have in emergency, nonvoluntary commitments entitles plaintiffs to the classification of social worker IV. Ill. Rev. Stat. 1987, ch. 38, par. 1003—8—5(e).

■ The Commission found against Russell and Gildehaus, basing its findings on a difference in required responsibility between the roles Russell and Gildehaus can or do play within IDOC and the complete role of a social worker IV. Neither one can certify an inmate for commitment except in emergencies and, even then, that certification would be too old to function as the official one. Regardless of any action by Russell or Gildehaus, an inmate patient could not be committed in court without a further evaluation by DMH workers made just prior to the court hearing.

■ Russell also argues that he shares equal responsibility with qualified examiners working in DMH because his actions as an examiner expose him to liability for malicious prosecution. (*Olsen v. Karwoski* (1979), 68 Ill. App. 3d 1031, 1036, 386 N.E.2d 444, 450.) The *Olsen* case, however, distinguishes the examiner who acts alone from the person who presents evidence to assist the court at a hearing where the court also examines other witnesses. (*Olsen*, 68 Ill. App. 3d at 1036-37, 386 N.E.2d at 450.) Russell will never have liability under *Olsen* because a social worker IV from DMH must always examine a patient after Russell does.

■ In sum, the CMS interpretation that social worker IV's are workers who can certify for commitment in both emergency and non-emergency situations is a reasonable one. Therefore, neither the Commission nor the circuit court was unreasonable when it affirmed the CMS reclassification for Russell and Gildehaus. For the reasons stated, we affirm the judgment of the trial court.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.