Fourth Division

August 21, 1997

No. 1-96-3776

CHICAGO TRANSIT AUTHORITY, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellant, ) COOK COUNTY.

)

   v. )

)

LYNN DOHERTY, DIRECTOR, ILLINOIS )

DEPARTMENT OF EMPLOYMENT SECURITY )

BOARD OF REVIEW, and its members )

individually, ROLAND W. LEWIS, )

JOHN G. CASHMAN, STANLEY V. MUCHA, )

GARY J. SULLIVAN, JON R. WALKER, )

and WILLIAM GRIFFIN, JR., )

)

Defendants-Appellees, )

)

and )

)

CHICAGO TRANSIT AUTHORITY, )

)

Plaintiff-Appellant, )

)

v. )

)

LYNN DOHERTY, DIRECTOR, ILLINOIS )

DEPARTMENT OF EMPLOYMENT SECURITY )

BOARD OF REVIEW, and its members )

individually, ROLAND W. LEWIS, )

JOHN G. CASHMAN, STANLEY V. MUCHA, )

GARY J. SULLIVAN, JOHN R. WALKER, )

and BRYANT ASKEW, ) HONORABLE

) LESTER A. BONAGURO,

Defendants-Appellees. ) JUDGE PRESIDING.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

In 1993 the Chicago Transit Authority (CTA) conducted a

"summer student program."  The CTA hired full-time college students to work on a temporary basis during the summer months. The purpose was to cover temporary vacancies that occur during the summer because of vacations and sick leave taken by full-time permanent bus operators.  In that way, college students obtain summer employment and the CTA keeps the buses running.

The question in this case is whether two college students,

once the program ended, were entitled to receive unemployment  compensation benefits.  We hold, under the circumstances of this case, they were not.

FACTS

The plaintiff in this case is the Chicago Transit Authority (CTA).  The defendants are Lynn Doherty, Director of the Illinois Department of Employment Security Board of Review; individual Board of Review members Ronald Lewis, John G. Cashman, Stanley Mucha, Gary Sullivan, and Jon Walker; and individual claimants William Griffin, Jr. (Griffin) and Bryant Askew (Askew).

In order to be considered for the "summer student program," applicants had to be full-time college students who either were registered for classes or were intending to register for classes in the fall semester.  The program ran until September 30.  All student participants were informed of the program requirements and the length of the program.

Askew

Askew participated in the 1993 summer student program.  When Askew was first interviewed and hired by the CTA, he was a full- time student at Illinois State University in Normal, Illinois.  

Before he started working, Askew signed an agreement which said:

"I understand that I am being hired by the Chicago Transit Authority as a temporary employee to work in place of permanent employees who are vacationing or are otherwise absent from duty. 

I further realize that this temporary employment will continue only as long as the Authority's needs require, but will not extend beyond September 30, 1993.

I also attest to the fact that I am presently a full-time student enrolled in an approved institution, that I am eligible to return to school, and that I will be registering for the next academic term immediately following this employment.  
I do not desire any employment with the Chicago Transit Authority beyond September 30, 1993
.

I am willing to accept employment with the Chicago Transit Authority under these conditions."  (Emphasis added.)

Askew resigned from the CTA effective October 1, 1993.  The record does not tell us whether he sought further employment with the CTA.  Askew did not return to Illinois State in the fall of 1993 because the university had cancelled his major.  Once Askew left the CTA, he looked for other work.  The record shows that Askew planned to go to the University of Illinois Chicago in the winter of 1994.

Askew applied for unemployment insurance benefits after he resigned from the CTA. 

The claims adjuster found Askew departed from the CTA because his temporary employment ended.  The reason Askew left was held to be attributable to the employer.  Askew was available for work and was actively seeking employment.  The adjuster decided Askew was eligible for benefits for the period.

The CTA appealed this decision.  On March 8, 1994, a hearing was held before a referee.  The referee affirmed the adjuster's decision.  The Board of Review affirmed the referee's decision and allowed Askew to claim benefits from October 24, 1993, until December 4, 1993.

Griffin

Griffin participated in the 1993 summer student program.  He signed the same agreement as Askew.  At some point, either right before the program began or during the summer, Griffin passed a make-up exam and received his associates degree from Truman College.  Griffin did not return to college in the fall.  He resigned from the program on September 30, 1993.  At some point after that, Griffin sought further employment with the CTA.  On December 7, 1993, the CTA rehired Griffin as a part-time bus driver.  The CTA did not discharge Griffin from the summer program because of misconduct.

Griffin applied for unemployment insurance benefits after he resigned from the CTA. 

The claims adjuster found Griffin was ineligible for benefits because he left the program voluntarily.  Griffin appealed this decision.  A hearing was held before a referee on March 2, 1994.  The referee decided Griffin was entitled to unemployment benefits.  The CTA appealed.  The Board of Review held a hearing on September 8, 1994.  The Board affirmed the referee's findings and allowed Griffin to collect benefits covering the period from October 10, 1993, to October 23, 1993.

The CTA consolidated the appeals to the circuit court of the decisions granting benefits to Askew and Griffin.  On September 27, 1996, the circuit court held a hearing concerning these cases.  The trial court affirmed both decisions by the Board of Review.

DECISION

The scope of review in cases like this is established.

The Board is the trier of fact and its factual findings are treated as 
prima
 
facie
 true and correct.  
Grant v. Board of
 
Review
, 200 Ill. App. 3d 732, 734, 558 N.E.2d 438 (1990).  A court should not disturb those factual findings unless they are contrary to the manifest weight of the evidence.  
Miller v.
 
Department of Employment Security
, 245 Ill. App. 3d 520,

521-22, 615 N.E.2d 35 (1993).  A reviewing court may not substitute its judgment for that of the administrative agency.  
Popoff v.
 Department of Labor
, 144 Ill. App. 3d 575, 577, 494 N.E.2d 1266 (1986). 

The claimant bears the burden of proving eligibility. 
Pearson v. Board of Review
, 194 Ill. App. 3d 1064, 1068, 551 N.E.2d 1021 (1990).  But the Unemployment Insurance Act (the Act) (820 ILCS 405/100 
et
 
seq
.) (West Supp. 1997), must be liberally interpreted to favor the awarding of benefits (
Adams v. Ward
, 206 Ill. App. 3d 719, 723, 565 N.E.2d 53 (1990)) to accomplish its primary purpose of alleviating economic distress caused by involuntary unemployment.  
Miller
, 245 Ill. App. 3d at 522.      

We have examined the record concerning each claimant to determine whether the Board's conclusions are against the manifest weight of the evidence.

   
1. Bryant Askew
 

The CTA contends there are three reasons why Askew was not  eligible to receive benefits.

One reason is that Askew was a full-time student when he applied for the summer employment.  The Act requires that a claimant be "available for work."  820 ILCS 405/500(C) (West Supp. 1997) (Section 500(C)).  Someone is unavailable for work "when his principal occupation is that of a student in attendance at, or on vacation from, a public or private school."  Section 500(C)(4).

The decision relied on by the CTA, 
Miller
, 245 Ill. App. 3d 520.

denied benefits to a claimant who was attending school at the  time he applied.  His principal occupation was that of a student.  Miller was not, then, a member of the work force.  That is not the case here.  Askew did not return to school in the fall.

In a similar situation, we held section 500(C)(4) did not apply to a claimant who began the CTA's summer program with the intent to return to school, but changed her mind before

the program ended.  In 
Chicago Transit Authority v. Didrickson
,  276 Ill. App. 3d 773, 779, 659 N.E.2d 28 (1995), we held the claimant was entitled to unemployment compensation because she was a member of the work force, not a student, at the time she applied for the benefits.  We reject the CTA's contention that section 500(C)(4) renders Askew ineligible for unemployment benefits.

The CTA contends Askew is ineligible for benefits under section 602(A) (820 ILCS 405/602(A) (West 1993)) because he was "discharged for misconduct connected with his work."  The "misconduct" claimed by the CTA is Askew's purportedly false representation that he was a full-time student who would return to school full-time in the fall of 1993. 

We accept the Board's finding that Askew did not intentionally lie on his application or in his hiring agreement. In addition, for a claimant to be ineligible for benefits under section 602(A) the cause of his discharge must be his work-related misconduct.  
Katten Muchin & Zavis v. Department
 of Employment Security
, 279 Ill. App. 3d 794, 799, 655 N.E.2d 403 (1996).  Also see 
Garner v. Department of Employment Security
, 269 Ill. App. 3d 370, 374, 646 N.E.2d 3 (1995).  Askew was not discharged because of the contents of his application or his hiring agreement.  In fact, the CTA maintains Askew was not discharged at all, that he left voluntarily.  We reject the CTA's contention that section 602(A) bars Askew from receiving benefits.       

The CTA's remaining contention, however, has merit.

Under the Act, a person is not eligible for benefits if he  leaves his employment voluntarily.  That is:

    "An individual shall be ineligible for benefits

for the week in which he has left work voluntarily

without good cause attributable to the employing unit***" 

     820 ILCS 405/601(A) (West 1993). 

We have been provided with some guidance on the meaning of "good cause attributable to the employing unit."  It is "such cause [which] justifies an employee in voluntarily departing the ranks of the employed and in joining the ranks of the unemployed."  
Farmers Insurance Exchange v. Department of Labor
, 186 Ill. App. 3d 493, 501, 542 N.E.2d 538 (1989), "Good cause depends on the claimant's 'unique personal circumstances' and the reasonableness of her actions."  
Grant
, 200 Ill. App. 3d at 734.  The focus of the inquiry is on the conduct of the employer and not the conduct of the employee.  
Pearson
, 194 Ill. App. 3d at 1069.

The generality of the statute requires us to examine the circumstances of each parting of the ways that causes a section 601(A) controversy.  There is "no hard and fast rule applicable to all situations where temporary employment is involved."  
Calkins v. Board of Review
, 141 Ill. App. 3d 36, 39, 489 N.E.2d 920 (1986).

Askew was a temporary replacement worker.  Everyone understood that.  His agreement with the CTA called for him to leave the job September 30 to resume his college education.  He left.  Was that a voluntary leaving?  The Board contends we answered that question in 
Didrickson
, 276 Ill. App. 3d 773.

In 
Didrickson
, the claimant took part in the 1992 CTA Summer Student Program.  She had signed an agreement similar to the one signed by Askew.  During the summer, while employed by the CTA, the claimant decided not to return to school.  She told the CTA she would not be returning to school.  She asked that she be kept on as a permanent employee.  Despite having told her and other temporary employees they could submit written applications for permanent employment, the CTA did not respond to her written requests to stay on the job.  When September 30 arrived without any response from the CTA, the claimant resigned.  She said she did so because she was told that was the only way to be considered for permanent employment.  When no job offer was made, the claimant applied for unemployment benefits.  The Board granted her claim, but the circuit court reversed the Board.  Then this court held she was entitled to benefits.

We observed that nothing in section 601(A) disqualifies employees hired for a specified term, "nor does the Act otherwise exclude those workers who are hired for temporary positions and find themselves unemployed upon the expiration of the employment term."  
Didrickson
, 276 Ill. App. 3d at 777-78.

We said in 
Didrickson
: "The fact that a claimant's unemployment has resulted from the termination of temporary employment does not automatically render the separation a voluntary leaving under section 601(A) of the Act."  
Didrickson
,  276 Ill. App. 3d at 778.

The fact that does matter, that controls the application of section 601(A), is whether the decision to continue working is solely that of the worker.  It is on this crucial point that the facts of 
Didrickson
 and of this case diverge.

Unlike the claimant in 
Didrickson
, Askew did not indicate to the CTA before September 30 that he wanted to stay on.  He did not apply for continued employment.  He did not tell the CTA he would not be returning to college.

There is another important factual difference.  The 1993 agreement signed by Askew contained a sentence that was not in the 1992 agreement signed by the claimant in 
Didrickson
.

That sentence is:  "I do not desire any employment with the Chicago Transit Authority beyond September 30, 1993."

This case is close to 
Calkins
, 141 Ill. App. 3d 36.  There, a legal secretary had agreed to work for a specified number of weeks while the employer's permanent secretary took a leave of absence.  She understood her term of employment would end when the regular secretary returned.  The temporary employee never asked for additional employment before she left the job.  The Court held section 601(A) was a bar to her claim for unemployment benefits.

We conclude Askew voluntarily left his job with the CTA on September 30 within the meaning of section 601(A).  The fact that he looked for other employment soon after he left the CTA does not affect our decision.  It is the leaving on September 30 that matters.  Before then, he did nothing to put the CTA on notice that he wanted to stay on the job.  The Board's finding that Askew was entitled to unemployment insurance benefits was against the manifest weight of the evidence.

   
2. William Griffin, Jr.

The CTA's contentions concerning Griffin's claim are similar to those made in Askew's case.

The CTA claims Griffin misrepresented his status as a student when he applied for the summer job.  We find, as we did in Askew's case, there is no evidence Griffin was discharged for alleged misconduct.  Section 602(A) does not apply.  See 
Katten Muchin & Zavis
, 279 Ill. App. 3d at 799.

The CTA contends that Griffin was unavailable for work because his principal occupation was that of a student, barring him from unemployment benefits under section 500(C)(4).  Of course, the CTA also claims Griffin never really intended to go back to school.  Aside from noting that apparent inconsistency of position, we find, as did the Board, the controlling fact is that Griffin was not a student when he applied for benefits.  He was available for work under section 500(C)(4).  See 
Didrickson
, 276 Ill. App. 3d at 779.

It is the CTA's other contention that stops Griffin from receiving benefits.  He, like Askew, did not, before September  30, tell the CTA he wanted to stay on, either as a temporary or permanent employee.  He did not tell the CTA he was not returning to school in the Fall.  His agreement, too, said: "I do not desire any employment with the Chicago Transit Authority beyond September 30, 1993."  It was not until shortly after September 30 that Griffin applied for reemployment with the CTA.

For the same reasons we set out in Askew's case, we hold the Board's decision to grant benefits to Griffin was against the manifest weight of the evidence.

                          CONCLUSION

The Board's findings that Bryant Askew and William Griffin, Jr. were entitled to unemployment insurance benefits were against the manifest weight of the evidence.  The circuit court decision

affirming the Board of Review is reversed.

REVERSED.

McNAMARA and CERDA, JJ., concur.