2021 IL App (1st) 182525
No. 1-18-2525

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| PROSPECT HEIGHTS FIRE PROTECTION DISTRICT, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 2018 L 50167 |
| v. | ) ) | |
| THE DEPARTMENT OF EMPLOYMENT SECURITY; BOARD OF REVIEW FOR THEDEPARTMENT OF EMPLOYMENT SECURITY; JACK L. CALABRO, in His Official Capacity as Chairman of the Board of Review; and ROBERT J. PYZYNA, | ) ) ) ) ) ) ) | The Honorable James M. McGing, Judge Presiding. |
| | ) ) | |
| Defendants | ) ) | |
| (The Department of Employment Security, The Board of Review for the Department of Employment Security, and Jack L. Calabro, | ) ) ) ) | |
| Defendants-Appellants). | ) ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendants—the Illinois Department of Employment Security (IDES), Board of Review

for the Illinois Department of Employment Security (Board or Board of Review), and Jack L.

Calabro, the Chairman of the Board of Review—appeal an order of the circuit court reversing the Board's decision that Robert Pyzyna, who retired after reaching the statutorily mandated retirement age of 65 and was collecting pension benefits, was also eligible to seek unemployment benefits. For the reasons explained herein, we affirm the judgment of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3         Career firefighter Robert Pyzyna[1] was employed by plaintiff, Prospect Heights Fire Protection District (District), from June 2005 until his retirement in October 2017. Pyzyna's final day of work was October 28, 2017, and his official date of retirement was October 31, 2017. Pyzyna's retirement was predicated on his reaching the age of 65, the mandatory retirement age for active firefighters, according to the Fire Protection District Act (Fire Protection Act). See 70 ILCS 705/16.13b (West 2016) ("The age for mandatory retirement of firemen in the service of any department *** is 65 years ***."). Pyzyna retired with a defined benefit pension plan under the Illinois Pension Code. See 40 ILCS 5/4-101 *et seq.* (West 2016) (setting forth the Illinois Firefighters' Pension Fund). He began receiving pension benefits in accordance with that plan in November 2017. That same month, Pyzyna also filed a claim for unemployment benefits in accordance with the Unemployment Insurance Act (Unemployment Act) (820 ILCS 405/100 *et seq.* (West 2016)). In his claim for unemployment benefits, Pyzyna indicated that he sought those benefits because he had been "laid off" from his place of employment. Pyzyna was subsequently sent a questionnaire to assess his eligibility for unemployment benefits. In the questionnaire, Pyzyna acknowledged that he was receiving monthly pension benefits in accordance with the provisions of his defined benefit plan.

---

[1]Although named as a defendant in circuit court proceedings, he is not a party to this appeal.

¶ 4                                A. Administrative Proceedings

¶ 5        On November 8, 2017, the District was notified of Pyzyna's claim for unemployment benefits and responded by filing a protest with IDES challenging his claim. In its filing, the District argued: "Mr. Pyzyna retired and [was] provided an employer sponsored, defined benefit pension, he was not 'laid off' for any reason and we challenge any award of unemployment benefits."

¶ 6        Following the District's protest, IDES scheduled an interview with Pyzyna to resolve his eligibility for unemployment benefits. Following that interview, IDES issued a written decision in which it found that Pyzyna was eligible for unemployment benefits because there was no evidence that he was discharged due to any misconduct; rather, IDES found that "[t]he evidence shows claimant was separated from [the District] due to lack of work. The claimant met the maximum age requirement to work. The reason for separation cannot be made the basis for disqualification and the claimant in not ineligible for benefits *** in regard to this issue."

¶ 7        The District, in turn, filed a "request for reconsideration," urging IDES to reconsider its finding that Pyzyna was "not ineligible" for unemployment benefits. In its filing, the District argued: "The Determination notes that the 'Issue' involved with the claim for unemployment insurance benefits was Misconduct and the question posed appears to have been 'Was the claimant discharged for misconduct connected with work?' The [D]etermination further notes that the 'claimant was separated from [the District] due to lack of work.' Neither 'misconduct' nor 'lack of work' ever played a part in the retirement of the claim from [the District] and it is unclear how these allegations ever came to be the basis of the Department's determination."

¶ 8        Following the District's request for reconsideration, an administrative law judge (ALJ) presided over a telephone hearing on the matter. During the brief hearing, both Pyzyna and District Deputy Fire Chief Tim Jones testified that Pyzyna's career as a District firefighter ended when he

reached the mandatory retirement age of 65 and that it was not the result of any wrongdoing or misconduct. When the parties questioned why IDES was considering the issue of misconduct, the ALJ explained that IDES claims adjudicators consider that issue when a person's separation from his place of employment is involuntary, such as when an individual is laid off. Although the ALJ acknowledged that the circumstances of Pyzyna's unemployment were unique and that his claim essentially required her to fit a "square peg into a round hole," the issue of misconduct had to be considered.

¶ 9        Ultimately, at the conclusion of the hearing, the ALJ took the matter under advisement. Shortly thereafter, the ALJ issued a written decision. In the written disposition, the ALJ framed the issue as: "whether claimant was discharged for misconduct connected with [his] work?" and ultimately concluded the Pyzyna's separation from his employment was not the result of misconduct rendering him ineligible for unemployment benefits. The rationale for that conclusion was based on the ALJ's examination and application of section 602A of the Unemployment Act, and was explained as follows:

> "820 ILCS 405/602A provides that an individual shall be ineligible for benefits for the weeks in which he has been discharged for misconduct connected with his work and, thereafter, until he has become re-employed and has had earnings equal to or in excess of his current weekly benefit amount in each of four calendar weeks. The term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit.

Section 602A ordinarily applies in a situation in which a separation from the employment is initiated by the employer. Even though, due to the requirements of Illinois law, the employer in this case had no discretion in initiating the separation from employment, the circumstances of the claimant's separation must be evaluated under the terms of Section 602A of the Act. As there is no showing, by the preponderance of the evidence, that the claimant was discharged for 'misconduct connected with' the work, the claimant is considered to be not disqualified from receiving benefits under Section 602A of the Act."

¶ 10    Following the ALJ's decision, the District appealed to the Board. After conducting its own review of the hearing testimony and documentary evidence, the Board affirmed the ALJ's decision. In its written disposition, the Board, like the ALJ, based its analysis on the issue of misconduct and whether Pyzyna left work voluntarily and concluded that Pyzyna's separation from the District was neither voluntary nor the result of misconduct. With respect to the issue of voluntariness, the Board concluded:

"We find that the evidence contained within the record failed to show that the claimant intended to leave the employ of the employer. We hold that in the instant case, the employer took action which resulted in the claimant's unemployment when the employer separated the claimant from the employ of the employer due to the claimant reaching the age of 65."

Regarding the issue of misconduct, the Board observed that

"[t]he term 'misconduct' means the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has

been repeated by the individual despite a warning or other explicit instruction from the employing unit."

The Board then concluded that there was no misconduct in the instant case, reasoning:

"In the case herein, the claimant was discharged due to the claimant reaching the age of 65. The employer has failed to propound such evidence of deliberate conduct and a willful disregard of the employer's interest by the claimant. At best the evidence presented herein showed that the claimant was unable to perform the claimant's job within the parameters set by the employer."

Given the lack of evidence that Pyzyna left his job with the District voluntarily or that he was discharged for misconduct, the Board found him "eligible" for unemployment benefits.

¶ 11                                    B. Circuit Court Proceedings

¶ 12        After the Board issued its decision, the District filed a complaint for administrative review in the circuit court (735 ILCS 5/3-101 *et seq.* (West 2016)), challenging the Board's finding that Pyzyna was eligible for unemployment benefits. In its complaint, the District argued that the Board reached its erroneous conclusion by failing to properly consider the legal effect of the mandatory retirement age for firefighters set forth in the Fire Protection Act and by focusing on the irrelevant issue of "misconduct."

¶ 13        Following briefing on the matter, the circuit court presided over a hearing, the transcripts of which do not appear in the record on appeal. After considering the arguments advanced by the parties, the circuit court ultimately entered a written order reversing the decision of the Board. In its order, the court agreed with the District that the Board "analyzed issues that were not relevant" when it focused so heavily on the presence or absence of "misconduct," as there was no dispute that Pyzyna's employment as a firefighter concluded when he reached the mandatory retirement

age of 65 not because he engaged in any misconduct. Accordingly, the circuit court framed the relevant dispositive issue as follows:

"[W]hether the Fireman Act's mandatory retirement clause constitutes an involuntary leave of employment or a voluntary leave not attributable to the employer or whether the Defendant Claimant who no longer meets the qualifications to be a fireman in Illinois can somehow attribute that to his former employer or is the separation for just cause[?]"

¶ 14    Noting that there were no Illinois cases examining the effect of statutory mandated retirement on claims for unemployment benefits, the court examined cases from other jurisdictions that have found that employees who reach the mandatory retirement age set forth in their collective bargaining agreements are not entitled to unemployment benefits because their separations from their places of employment when they reach the bargained-for retirement age are considered voluntary. See, *e.g.*, *Marcum v. Ohio Match Co.*, 212 N.E.2d 425 (Ohio Ct. App. 1965); *Bergseth v. Zinsmaster Baking Co.*, 89 N.W.2d 172 (Minn. 1958). Although the circuit court acknowledged that the mandatory retirement age at issue was set by statute and not included in a collective bargaining agreement, it found the analysis of those cases to be nonetheless "persuasive." The court explained:

"Defendant, Robert Pyzyna, was required to retire from Plaintiff Prospect Heights Fire Protection District at the age of 65 due to the mandatory retirement clause in the Fire Protection Act that he knowingly agreed to by his acceptance of the position. He left his employment because he no longer could meet the eligibility requirements for the position and not through any actions or inactions of his employer. As such, as other states have determined on this issue, this Court finds that Defendant-Claimant voluntarily agreed to

the age requirement when he accepted this employment and as such, this Court views his 'separation' as voluntary without any good cause attributable to the employer."

¶ 15 Accordingly, the court concluded:

"This Court finds that as a matter of law, the Defendant is ineligible to receive unemployment benefits because he left his employment without just cause attributable to the Employer. His acceptance of employment with the statutorily prescribed mandatory retirement age amounts to a voluntary leaving.

The Board of Review's analysis under Section 602A of the Illinois Unemployment Insurance Act was an attempt to ignore the statutorily prescribed mandatory retirement age while adhering to the unemployment laws and the Board inappropriately applied a misconduct standard to this matter.

Thus, the Fire Protection Act's mandatory retirement clause constitutes a leave without just cause attributable to the employer. For these reasons, the decision of the Board of Review is reversed."

¶ 16 This appeal followed.

¶ 17 II. ANALYSIS

¶ 18 A. Mootness

¶ 19 On appeal, the parties have submitted briefs contesting the propriety of the Board's determination that Pyzyna was eligible for unemployment benefits. After the matter had been fully briefed and while the appeal remained pending, however, defendants filed a motion to vacate the circuit court's judgment because the matter was moot. In support, defendants noted that pursuant to section 500 of the Unemployment Act, a claimant seeking unemployment benefits is only eligible for benefits for the weeks that he submits a claim for those benefits. See 820 ILCS

405/500(B) (West 2016) ("An unemployed individual shall be eligible to receive benefits with respect to any week only if the Director finds that: ***(B) He has made a claim for benefits with respect to such week in accordance with such regulations as the Director may prescribe."). Moreover, citing sections 402 and 329 of the Act, defendants observed that a claimant seeking benefits who submits a weekly claim will have his benefits reduced by any weekly earnings he received and that a claimant whose weekly earnings exceed the benefit amount is not considered to be an "unemployed individual" as defined by the Act and will not be entitled to unemployment benefits. See *id.* § 402 ("[r]educed weekly benefits" provision); *id.* § 239 ("[u]nemployed individual" provision). Relying on the aforementioned statutory provisions, defendants argued:

> "After Pyzyna submitted his unemployment insurance claim, he submitted certifications for the weeks of November 11, 2017, and November 18, 2017, which reported income greater than or equal to his weekly benefit amount. *** The Department thus notified him that he was ineligible for benefits for those weeks. *** Pyzyna submitted no further certifications of eligibility to obtain benefits, and has not been paid any unemployment benefits. ***
>
> Because Pyzyna was not paid any benefits for the two-week period for which he submitted certifications, and has not submitted any further certifications, he is not eligible for unemployment benefits under the Act. See 820 ILCS 405/500 (2018). As a result, regardless of how this Court resolves the issue of whether he was disqualified for benefits under 601(A) or 602(A) of the Act, Pyzyna remains ineligible for benefits. The matter, therefore, is moot."

¶ 20 Defendants supported their motion to vacate on mootness grounds with a document sent to Pyzyna from IDES in response to his two November 2017 certifications, informing him that his

weekly earnings of $1467.27 exceeded his weekly benefit amount of $449. A "verification" from IDES's first deputy legal counsel was also attached to the motion in which counsel averred that Pyzyna only submitted certifications for the weeks of November 11, 2017, and November 18, 2017, and that his certifications "reported income greater than or equal to his weekly benefit amount," rendering him ineligible for unemployment benefits. Counsel further averred that Pyzyna submitted no additional certifications.

¶ 21　　　　The District, in turn, filed a response to defendants' motion, in which it agreed that the instant appeal should be dismissed as moot because Pyzyna is ineligible for unemployment benefits regardless of this court's ruling.[2]

¶ 22　　　　In light of these latest filings, this court must first consider the parties' contention that the matter at issue is moot.

---

[2]In its response, the District also urged this court to sanction defendants in accordance with Illinois Supreme Court Rule 137(a) (eff. July 1, 2013), arguing that defendants should have been aware of Pyzyna's ineligibility for benefits much earlier. That rule requires that every pleading filed by a party represented by an attorney be signed by that attorney, certifying that the pleading is well grounded in fact and supported by law and is not intended for any improper purpose, such as to harass, delay, or needlessly increase the cost of litigation. It permits the *circuit court* to impose "an appropriate sanction" on a party who violates the rule. *Id.* Rule 137 is not applicable when the proponent seeks to impose sanctions for the first time on appeal. See, *e.g.*, *Kennedy v. Miller*, 197 Ill. App. 3d 785, 788 (1990). Rather, Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) governs appellate sanctions and provides as follows: "If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense." *Id.* Even if we were to construe the District's request for sanctions under the proper rule, we do not believe the record supports a finding that the instant appeal is frivolous or that it was not brought in good faith. Although we acknowledge that evidence of Pyzyna's ineligibility for unemployment benefits could ostensibly have been discovered sooner, we decline to sanction defendants for their oversight.

¶ 23     Because the existence of an actual controversy is a prerequisite for appellate jurisdiction, reviewing courts will generally not decide matters that are abstract, hypothetical, or moot. *In re Andrea F.*, 208 Ill. 2d 148, 156 (2003). An issue is moot where an actual controversy no longer exists between the parties or where events have occurred that make it impossible for the court to grant effective relief. *Id.*; *People ex rel. Ulrich v. Stukel*, 294 Ill. App. 3d 193, 198 (1997). When considering the issue of mootness, the court may take judicial notice of events and materials that do not appear in the record to determine whether an actual controversy exists or whether the matter is moot. *In re Andrea F.*, 208 Ill. 2d at 156; *Wilder Chiropractic, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130781, ¶ 75.

¶ 24     To resolve the issue of mootness with respect to this appeal, we must examine the Unemployment Act, which governs Pyzyna's claim for unemployment benefits. Enacted in 1937, the Act provides economic relief to unemployed individuals through the collection of compulsory monetary contributions from employers. 820 ILCS 405/100 (West 2016); *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 396 (2001). The right of an unemployed individual to receive benefits under the Act is not automatic, however; rather, it is a "conditional right" subject to eligibility requirements, and it is the burden of the claimant to establish his or her eligibility for such benefits. *Popoff v. Department of Labor*, 144 Ill. App. 3d 575, 577 (1986). For example, individuals who are unemployed as a result of their own volition or as a result of misconduct are unable to collect unemployment benefits. 820 ILCS 405/601(A), 602 (West 2016); see also *Dunn v. Department of Labor*, 131 Ill. App. 3d 171, 173 (1985) (recognizing that the Act only "provide[s] benefits to workers coming within its provisions, for unemployment not occasioned with their consent or brought about by their fault"). Individuals whose reasons for unemployment do not disqualify them from receiving benefits will receive benefits for the weeks

in which they file a certification for benefits. 820 ILCS 405/500(B) (West 2016). Where an individual receives income from another source that equals or exceeds the amount of unemployment benefits to which they would otherwise be entitled, he or she is not considered an unemployed individual and will not receive benefits under the Act. *Id.* § 239.

¶ 25    Based on these provisions, we agree with the parties that the instant appeal is moot. Regardless of whether the circumstances of Pyzyna's unemployment can be classified as involuntary or the result of misconduct, the two certifications that he filed reveal that his weekly income from outside sources exceed the amount of unemployment benefits he would otherwise allegedly be eligible to receive. Specifically, the certifications reveal he received $1467.27[3] each week, a sum greater than his weekly unemployment benefit amount of $449. After being notified that his weekly earnings precluded him from receiving unemployment benefits, Pyzyna did not submit any additional certifications. Thus, even if the Board correctly determined that the circumstances of Pyzyna's unemployment do not preclude him from seeking unemployment benefits, the weekly earnings he receives prohibit him from actually receiving unemployment benefits. Based on these facts, there is no relief that this court can provide, and the matter is thus moot. See *In re Andrea F.*, 208 Ill. 2d at 156.

¶ 26    There are exceptions to the mootness doctrine, however. For example, the public interest exception to the mootness doctrine permits a court to review an otherwise moot question "when the magnitude or the immediacy of the interests involved warrants action by the court." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 12. The public interest exception is "narrowly construed" (*id.* ¶ 13) and applies only when " '(1) the question

---

[3]Although we presume that the income reported on Pyzyna's certifications is his pension benefit, it is not clear from the record what the exact source of that income is.

presented is of a public nature; (2) an authoritative determination of the question is desirable for the future guidance of public officers; and (3) the question is likely to recur' " (*id.* ¶ 12 (quoting *In re Shelby R.*, 2013 IL 114994, ¶ 16)). For the public interest exception to apply, there must be " 'a clear showing of each criterion.' " *In re Alfred H.H.*, 233 Ill. 2d 345, 356 (2009) (quoting *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 292 (2005)).

¶ 27     Here, we find that the public interest exception applies. With respect to the first factor, we note that the issue raised on appeal—whether a firefighter who reaches the statutorily mandatory age of retirement is eligible to seek unemployment benefits under the Unemployment Act— involves a matter of statutory interpretation, which is an issue that is of a public nature. See *People v. Horsman*, 406 Ill. App. 3d 984, 986 (2011) (recognizing that an issue of statutory interpretation raises a question that is of a public nature). Regarding the second factor and whether an authoritative determination on the issue is desirable, a court must consider whether the law is in disarray or whether conflicting precedent exists. *Commonwealth Edison Co.*, 2016 IL 118129, ¶ 16. As a general rule, where the issue raised on appeal is one of first impression, no conflict or disarray in the law exists, and the public interest exception generally does not apply. *Id.*; see also *In re Commitment of Hernandez*, 239 Ill. 2d 195, 202-03 (2010). However, the supreme court has recognized that the absence of legal conflict does "not necessarily" bar review of an issue that is of a public nature and that "even issues of first impression may be appropriate for review" under the public interest exception to aid public officials in properly applying the law. *In re Shelby R.*, 2013 IL 114994, ¶ 20; see also *Horsman*, 406 Ill. App. 3d at 986 (finding that the public interest exception to the mootness doctrine applied to an issue of first impression). Here, the issue raised in this appeal is one of first impression, and we find that resolving the issue would aid IDES officials in performing their duties and in properly applying the law. As such, we find that the

second prong of the public interest exception is also satisfied. Finally, with respect to the third factor, given the large number of firefighters employed in this state, we believe that absent a ruling on this issue, questions about the interplay between the Fire Protection Act's mandatory retirement provision and the Unemployment Act are likely to reoccur. Having found that the public interest exception to the mootness doctrine applies, we will address the substantive merits of this appeal and examine the propriety of the Board's conclusion that Pyzyna's statutorily mandated retirement did not preclude him from seeking unemployment benefits under the Unemployment Act.

¶ 28                                    B. Board's Decision

¶ 29        This appeal, like all appeals from stemming from an administrative proceeding, is governed by administrative review law (735 ILCS 5/3-101 *et seq.* (West 2016)). *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 385 (2010). On appeal from a circuit court's judgment on administrative review, a reviewing court reviews the decision of the agency, not the circuit court. *Provena Covenant Medical Center*, 236 Ill. 2d at 386; *Ramirez v. Andrade*, 372 Ill. App. 3d 68, 73 (2007). In reviewing an administrative agency's decision, the applicable standard of review depends upon the type of question raised on appeal. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998). An administrative agency's factual findings and credibility determinations are deemed *prima facie* true and correct, and a reviewing court is limited to ascertaining whether those findings are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210; *City of Belvidere*, 181 Ill. 2d at 204. A finding is against the manifest weight of the evidence only if " 'the opposite conclusion is clearly evident' " or if the finding is " 'unreasonable, arbitrary, and not based upon any of the evidence.' " *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271 (2004) (quoting *Snelson v. Kamm*, 204 Ill. 2d 1,

35 (2003)). The mere fact that the agency could have ruled differently is not reason to reverse the administrative agency's factual findings; rather, as long as there is evidence in the record that supports the agency's decision, it should be upheld on appeal. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund of the City of Carbondale*, 177 Ill. 2d 533, 538 (1997). An administrative agency's conclusions regarding questions of law, in contrast, are not subject to deference; rather, this court's review is independent, and we will apply a *de novo* standard to such issues. *Cinkus*, 228 Ill. 2d at 211; *City of Belvidere*, 181 Ill. 2d at 205. Finally, an administrative agency's conclusions with respect to mixed questions of fact and law will not be disturbed unless they are clearly erroneous. *Cinkus*, 228 Ill. 2d at 211. A question of mixed fact and law is one in which the agency conducts an examination of the legal effect of a given set of facts. *Id.*; *City of Belvidere*, 181 Ill. 2d at 205. An administrative agency's conclusion will be found to be clearly erroneous when a reviewing court is left with the " 'definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 30    The facts in this case are undisputed. That is, Pyzyna's retirement from the District was predicated on his reaching the mandatory retirement age set forth in the Fire Protection Act. The issue is whether, given the circumstances of his retirement and his resulting unemployment, Pyzyna is disqualified from or eligible to seek unemployment benefits pursuant to the Unemployment Act. This is a mixed question of fact and law. As such, the Board's finding will not be disturbed unless it is clearly erroneous. Having decided on the applicable standard of review, we turn to the merits of the appeal.

¶ 31    Defendants argue that the circuit court erred in reversing the Board's decision because the Board's finding was not clearly erroneous. Specifically, defendants argue that the Board correctly

found that Pyzyna's retirement was not a voluntary separation from his employment with the District and was not the result of misconduct and that his eligibility for unemployment benefits was therefore not precluded by sections 601(A) or 602 of the Unemployment Act.

¶ 32        The District, in turn, responds that the circuit court properly reversed the Board's judgment. Although the District agrees that there was no evidence of misconduct, it argues that Pyzyna's retirement was a voluntary act because the firefighter position that he accepted with the District was subject to a mandatory retirement age of 65, which was a term of employment that he voluntarily agreed to and accepted when he commenced his career as a firefighter.

¶ 33        To resolve this issue, we again examine the Unemployment Act. As explained above, the Unemployment Act only provides benefits to individuals whose unemployment is "not occasioned with their consent or brought about by their fault." *Dunn*, 131 Ill. App. 3d at 173; see also *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 24 (recognizing that the Unemployment Act "is aimed at alleviating the burdens of 'involuntary' unemployment"). Accordingly, section 601(A) of the Unemployment Act precludes an individual whose unemployment is voluntary without good cause attributable to the employer from collecting unemployment benefits. 820 ILCS 405/601(A) (West 2016) ("An individual shall be ineligible for benefits for the week in which he or she has left work voluntarily without good cause attributable to the employing unit ***."). Section 602(A), of the Act, in turn, precludes individuals whose unemployment stems from their own misconduct from collecting unemployment benefits. *Id.* § 602(A) ("An individual shall be ineligible for benefits for the week in which he has been discharged for misconduct connected with his work ***."). The Act defines misconduct as the

> "deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation

has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." *Id.* Although the Act should be liberally construed to favor the awarding of unemployment benefits, it is ultimately the burden of the claimant to establish his or her eligibility for those benefits. *Chicago Transit Authority v. Doherty*, 291 Ill. App. 3d 909, 912-13 (1997).

¶ 34    Here, there is no dispute that Pyzyna's separation from the District was not occasioned by any misconduct as he did not deliberately or willfully violate any of the District's rules or policies; rather, he simply reached the statutorily mandated age of retirement set forth in the Fire Protection Act and was required to retire as he no longer met the requirements to be a firefighter. Instead, the relevant question is whether Pyzyna's statutorily mandated retirement can be considered a voluntary act without good cause attributable to his employer within the meaning of the Unemployment Act.

¶ 35    The parties agree that there are no Illinois cases addressing the effect of mandatory retirement on a claimant's eligibility for unemployment benefits. More specifically, the parties further agree that no Illinois court has examined whether an individual's statutorily mandated retirement constitutes a "voluntary act without good cause attributable to his employer" pursuant to the Unemployment Act. They note, however, that various other jurisdictions have considered the effect that mandatory retirement provisions have on a claimant's eligibility for unemployment benefits. Most jurisdictions that have considered the issue have done so in the context of examining mandatory retirement provisions that were included in employment agreements through the collective bargaining process. Notably, the authorities are split on this issue. Compare *Campbell Soup Co. v. Board of Review*, 100 A.2d 287 (N.J. 1953) (holding that mandatory retirement is not a voluntary leaving of employment and that employees who are forced to retire when they reach

the mandatory retirement age set forth in their collective bargaining agreements are entitled to unemployment benefits), *Employment Security Comm'n v. Magma Copper Co.*, 366 P.2d 84 (Ariz. 1961) (same), and *Duval Corp. v. Employment Security Comm'n*, 1972-NMSC-007, 83 N.M. 447, 493 P.2d 413 (same), with *Bergseth*, 89 N.W.2d 172 (concluding that employees whose retirements are predicated upon their reaching the mandatory retirement age contained in their collective bargaining agreements are not entitled to unemployment benefits because their separations from their employers are voluntary and the result of the actions of their chosen bargaining agents and not the sole actions of their employers), and *Lamont v. Director of the Division of Employment Security*, 149 N.E.2d 372 (Mass. 1958) (same). The Supreme Court of Maine explained the basis for the split in judicial authority as follows:

> "In those jurisdictions awarding unemployment benefits, the rationale is that mandatory retirement is by its nature a forced retirement, that it is not an act of volition by the employee and if he is otherwise qualified under the terms of the reference statute, he is entitled to unemployment compensation. [Citations.]
>
> Cases reaching an opposite result do so by holding that the employee who accepts and retains employment aware of his employer's policy to retire him when he reaches a stated age, in effect accepts employment for a fixed term. He voluntarily accepts the retirement provisions as a feature of the employment relation, he agrees to quit work when he attains the prescribed age, and that within the terms of the act, his retirement is voluntary, and unemployment compensation is denied." *Richardson v. Maine Employment Security Comm'n*, 229 A.2d 326, 329-30 (Me. 1967).

Courts that have considered the voluntariness of a retirement mandated by a something other than a term agreed upon through the collective bargaining process have likewise reached different

results. Compare *State Hospital, Jamestown v. North Dakota Employment Security Bureau*, 239 N.W.2d 819 (N.D. 1976) (concluding that a state hospital employee, who retired after reaching the mandatory retirement age contained in one of the governor's executive orders, did not voluntarily terminate his employment, and as such, he was entitled to unemployment benefits), with *Richardson*, 229 A.2d 326 (concluding that a United States postal employee whose employment was terminated when he reached the mandatory retirement age set forth in a Federal Civil Service Commission regulation was not entitled to unemployment benefits because his separation from his place of employment was voluntary and without good cause attributable to his employer).

¶ 36       Following our review of the case law and the rationales expounded therein, we believe that the better approach is the one adopted by courts finding that employees who leave their places of employ due to a mandatory retirement policy or provision do so voluntarily absent good cause attributable to their employers. We find this result particularly appropriate, given the facts and circumstances of this case, since there is no dispute that Illinois fire departments are bound by the terms of the Fire Protection Act and the mandatory retirement provision contained therein. Indeed, the mandatory retirement provision is not a policy set by individual fire departments; rather, it is set by statute and is applicable to Illinois fire departments and firefighters. Pyzyna and all other firefighters thus know that their careers as firefighters are finite and will terminate when they reach the mandatory retirement age of 65. They know they no longer meet the qualifications to serve as a firefighter once they reach that age. By accepting employment at the District, Pyzyna accepted and agreed to abide by that employment term. We therefore conclude that when Pyzyna left his employ with the District, in accordance with the terms of his employment that he accepted when he commenced his career as a firefighter, he did so voluntarily. Moreover, given that the mandatory retirement policy at issue was set by statute and not by the District, Pyzyna's separation from his

place of employ cannot be considered good cause attributable to his employer. See *Pearson v. Board of Review of the Department of Employment Security*, 194 Ill. App. 3d 1064, 1069 (1990) (when evaluating whether good cause for leaving is attributable to the employer, the focus is on the conduct of the employer, not that of the employee). We therefore find that the Board's determination that Pyzyna's separation from the District was involuntary was clearly erroneous.

¶ 37    In so finding, we are unpersuaded by defendants' reliance on this court's prior decision in *Chicago Transit Authority v. Didrickson*, 276 Ill. App. 3d 773 (1995). In that case, a full-time college student was hired by the CTA to work during the summer months as part of its " 'summer student program.' " *Id.* at 774. The employment contract that the student entered into with the CTA included a specified termination date at the end of the summer. *Id.* Prior to that termination date, the student informed the CTA that she did not wish to return to school and was interested in pursuing full-time employment with the CTA. *Id.* at 775. She did not receive a response to her inquiries about the possibility of full-time employment before the termination date specified in her contract. *Id.* As a result, the student left her position with the CTA when the termination date arrived and filed for unemployment benefits. *Id.* The CTA, in turn, objected, arguing that the student was ineligible for unemployment benefits because she had left her position voluntarily. *Id.* This court, however, rejected the CTA's argument that an employee's acceptance of employment for a finite period of time necessarily results in a "voluntary" leaving at the end of that agreed-upon time period, reasoning:

"The fact that a claimant's unemployment has resulted from the termination of temporary employment does not automatically render the separation a voluntary leaving under section 601(A) of the Act. The statute does not disqualify all workers who leave their employment voluntarily, but only those who do so without good cause attributable to the

employer. This provision was intended to apply only to those situations where the decision of whether to continue working rests solely with the worker. Consequently, the statute deprives benefits to those claimants who have chosen to leave their employment of their own volition. We hold that the Act does not disqualify workers whose separation from work was compulsory under the terms of their employment contract or as a result of mandated policy adopted by the employer. Where the employment terms imposed by the employer allow the employee no alternative but to relinquish her position, the separation is not voluntary under section 601(A) of the Act." *Id.* at 778.

¶ 38    Unlike the situation in *Didrickson*, the reason for Pyzyna's separation from his employment was not due to a policy or employment term set by his employer; rather, both Pyzyna and the District were bound to abide by the mandatory retirement age set forth in the Fire Protection Act. Neither Pyzyna nor the District had the ability to disregard the statutorily mandated retirement age. Accordingly, unlike the student in *Didrickson*, there was no possibility that Pyzyna could continue to work for the District without violating the law. Indeed, there were no circumstances pursuant to which he could meet the requirements to serve as a firefighter. Therefore, *Didrickson* does not compel a different result.

¶ 39                                    III. CONCLUSION

¶ 40    We conclude that an Illinois firefighter who leaves his or her place of employment upon reaching the mandatory retirement age of 65 does so voluntarily absent good cause attributable to the employer and is not eligible to seek unemployment benefits pursuant to the Unemployment Act. Accordingly, we affirm the circuit court judgment reversing the contrary conclusion reached by the Board in this case.

¶ 41    Affirmed.

---

**No. 1-18-2525**

---

| | |
|---|---|
| **Cite as:** | *Prospect Heights Fire Protection District v. Department of Employment Security*, 2021 IL App (1st) 182525 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-L-50167; the Hon. James M. McGing, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Christina T. Hansen, Assistant Attorney General, of counsel), for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Stephen G. Daday, Daniel J. Lee, and Julie A. Repple, of Klein, Daday, Aretos & O'Donoghue, LLC, of Schaumburg, for appellee. |

---