2022 IL App (1st) 192495-U

No. 1-19-2495

Order filed January 21, 2022

SIXTH DIVISION

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BOARD OF EDUCATION OF RIVER TRAILS SCHOOL DISTRICT 26, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19 M3 4933 |
| PARK VIEW MONTESSORI SCHOOL and ALL UNKNOWN OWNERS OR OCCUPANTS, | ) ) ) | Honorable James P. Pieczonka, |
| Defendants-Appellees. | ) | Judge presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Connors and Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*: Appeal dismissed as moot where case concerned possession of premises and duration of lease but the lease is now undisputedly expired and the lessor is in possession of the premises.

¶ 2    Plaintiff Board of Education of River Trails School District 26 brought a forcible entry and detainer action against defendant Park View Montessori School to evict defendant from certain leased premises as its tenancy had expired. Defendant filed a counterclaim seeking a declaration that the lease was extended and its tenancy was not expired. Plaintiff and defendant filed summary

judgment motions, and the court granted defendant's motion, finding that defendants maintained valid possession of the premises pursuant to a lease agreement and addendum. Plaintiff filed a motion to reconsider that the trial court denied, finding that the lease was extended for a year from 2019 into 2020. On appeal, plaintiff contends that the court erred in denying its reconsideration motion as defendant's tenancy expired in 2019 by the terms of the lease. For the reasons stated below, we dismiss this appeal as moot.

¶ 3                                      I. JURISDICTION

¶ 4     Upon plaintiff's July 2019 complaint and defendant's August 2019 counterclaim, both parties filed summary judgment motions. The court granted defendant's motion and denied plaintiff's motion on August 27, 2019. Plaintiff's September 2019 reconsideration motion was denied on November 5, 2019, and plaintiff filed its notice of appeal on December 5, 2019.

¶ 5     Defendant contends that the August 2019 order was not final as to all claims so that this court lacks jurisdiction. However, that order denied plaintiff's summary judgment motion and granted defendant's summary judgment motion, and it provided that defendants had valid possession of the premises pursuant to the lease as amended until June 30, 2020. It thereby denied plaintiff's claim for possession and granted defendant's central counterclaim to retain possession and declare an extension of the lease. Implicit in the finding that the lease was valid until June 30, 2020, was that plaintiff's obligations under the lease also continued, as defendant counterclaimed. The November 2019 order denying reconsideration also provided that each party was to pay its own attorney fees, thus disposing of defendant's counterclaim for its costs of defending the forcible entry action. Lastly, the November 2019 order declared itself final and included a finding that there was no just reason to delay enforcement or appeal of the August 2019 order.

¶ 6     Accordingly, we have jurisdiction in this matter pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 301 (eff. Feb.

1, 1994) and 303 (eff. July 1, 2017) governing appeals of final orders in civil cases, or alternatively Rule 304(a) (eff. Mar. 8, 2016) governing appeals of partially final orders in civil cases.

¶ 7                                    II. BACKGROUND

¶ 8      The parties entered into a lease in March 2006 whereby defendant would occupy a school building owned by plaintiff. The lease was to run from July 1, 2006, to June 30, 2008, which "may be extended on a year by year basis upon approval by" plaintiff. In the clause regarding rent, the lease provided that "[c]ontinuation of the Lease Agreement and rent adjustments shall be negotiated by December 31st during the term of the Lease Agreement."

"Failure of [plaintiff] to insist on the strict performance of the terms, agreements and conditions herein contained, or any of them, shall not constitute or be construed as a waiver of relinquishment of [plaintiff's] right thereafter to enforce any such term, agreement or condition, but the same shall continue in full force and effect."

The lease provided that "[a]t the expiration of this lease, [defendant] will give peaceable possession of the premises to [plaintiff] in as good condition as that in existence at the date of execution of the lease, wear and tear arising from the reasonable use and damages by the elements excepted." Defendant "shall have the right to terminate the Lease Agreement on June 30th of any year of the agreement by giving written notice to [plaintiff] at the Premises of such intention at least one (1) year prior to the specified June 30th termination date," and plaintiff "shall have the option to terminate this Lease Agreement to meet student enrollment needs by giving written notice to [defendant] of its decision to occupy [the premises] at least one (1) year prior to taking occupancy."

¶ 9      The parties entered into an addendum to the lease in November 2018, expressly referring to a previous addendum in November 2017. It provided that, "[i]n accordance with [the lease] which provides for an extension on a year to year basis of said Lease upon approval by [plaintiff], [plaintiff] hereby approves and [defendant] accepts an extension of said Lease" from July 1, 2018,

to June 30, 2019. It also amended the dimensions of the leased premises, rent, and utility apportionment. The addendum provided that it was incorporated into the 2006 lease, its provisions "supersede any provisions to the contrary contained in said Lease as previously amended," and "all other terms and conditions as set forth in the [2006 lease] shall remain in full force and effect."

¶ 10                                                    A. Pleadings

¶ 11    Plaintiff filed its verified forcible entry complaint in July 2019, alleging that the 2006 lease between the parties for the premises was extended by the 2018 addendum to June 30, 2019. As the lease had expired by the time of the complaint, defendant's failure to vacate the premises was an unlawful withholding of possession. Plaintiff sought an order of possession for the premises and fees and costs for bringing suit. Attached to the complaint were copies of the lease and addendum.

¶ 12    Defendant appeared in July 2019 and filed its verified counterclaim in August 2019. It alleged that it had occupied the premises under various leases and addenda extending leases for over 40 years since 1976, in which time it maintained and made improvements to the premises at its substantial expense. The 2006 lease provided for extensions with plaintiff's approval but it was "completely silent regarding whether either Party had an option and/or right to extend the lease term." In other words, the lease did not address what should occur if the parties failed to negotiate or reach an agreement regarding lease continuation by December 31 of a lease year, nor the method and deadline for either party to notify the other that it intended, or was requesting, to extend the lease. "Nonetheless, following the end of the original 2006 lease term, the Parties' custom and practice for the last 10 years was to extend the term of the 2006 Lease by one-year intervals via regular, annual lease addendums." The addenda were "usually not negotiated and entered into until just prior to the start of a new lease term and in some cases, the addendums were not finalized until *after* the start of the new lease term." (Emphasis in original.) Indeed, "in many cases, the addendum

was signed months after the most recent extension," as shown by the November 2018 addendum regarding an extension from July 2018 through June 2019.

¶ 13    While the lease had no express extension provision, it provided for each party's right to terminate the lease, including that plaintiff could terminate the lease with written notice at least a year before taking occupancy. As shown by the minutes of plaintiff's board, plaintiff considered its May 2019 letter to defendant – stating that plaintiff would not be renewing the lease, without explaining the reason for that decision – to be a lease termination letter rather than a denial of renewal. "Accordingly, there was an expectation between the Parties that the lease term would extend on a year-to-year basis if neither party exercised their option to terminate the lease." Defendant argued that the one-year notice provision was in the lease "because both Parties recognize it is impractical to relocate an entire school and all its students with less than one-year's notice." The May 2019 letter was "inconsistent with the Parties' intent, customs and practices, which is reflected by the Parties' prior course of dealings" and could not terminate the tenancy until at least May 2020.

¶ 14    Since its July 2019 complaint, plaintiff had allegedly refused to perform its obligations under the lease by such actions as terminating garbage pickup, not performing snow removal and lawn maintenance, and prohibiting fire inspectors from full access to the premises for their inspection, a prerequisite for defendant's day care center license. Defendant also alleged that it had no alternative location for its programs so that if it was evicted from the premises it would lose its enrollment for the 2019-2020 school year.

¶ 15    In the first count of its counterclaim, defendant sought a preliminary injunction enjoining plaintiff from evicting defendant and taking possession of the premises until the parties agreed on an extension of the lease or defendant had an opportunity to find and move its programs to a new location. In its second count, defendant alleged breach of contract and sought specific

performance; that is, it alleged a valid tenancy under the lease as amended and sought an order that plaintiff must allow defendant's continued occupancy, allow building inspectors full access to the premises, and provide maintenance and other services as provided in the lease "for the remainder of the lease term." In its third count, defendant also alleged breach of contract and sought compensatory damages "[i]n the alternative, if [the trial c]ourt finds that Counter-Plaintiff is not entitled to specific performance and injunctive relief as alleged in Counts I and II," "including but not limited to" attorney fees and costs of defending the lawsuit and expenses of seeking and preparing a new location. In its fourth count, defendant sought a declaratory judgment that it had a valid tenancy over the premises until June 30, 2020, and that plaintiff was obligated by the lease to provide maintenance and other services after July 1, 2019.

¶ 16                                    B. Summary Judgment

¶ 17    Plaintiff filed a motion for summary judgment, arguing that defendant's tenancy had expired on June 30, 2019, pursuant to the lease as amended by the addendum. The lease provided for extensions upon plaintiff's approval, but plaintiff had not approved any extensions beyond the 2018 addendum; that is, past June 30, 2019. As the attached affidavit established that defendant had not vacated the premises after the lease expired, plaintiff argued that it should receive summary judgment in its favor. Attached to the motion was the affidavit of Dr. Nancy Wagner, plaintiff's superintendent of schools, averring that plaintiff's board had not approved any extensions beyond the 2018 addendum, the lease terminated on June 30, 2019, and defendant had not vacated the premises as of the July 2019 date Dr. Wagner signed the affidavit.

¶ 18    Defendant filed a cross-motion for summary judgment and response to plaintiff's summary judgment motion. It argued that plaintiff's motion depended upon selectively quoting the lease and addendum, and upon Dr. Wagner's affidavit not based on her personal knowledge as shown in her August 2019 deposition attached to defendant's motion. Specifically, she testified that she was not

plaintiff's superintendent until July 2017 and was not employed by plaintiff when the 2006 lease was negotiated or signed, so that she was not privy to "the lengthy 12-year course of dealings surrounding the annual lease extension process." Defendant argued that Dr. Wagner's affidavit should be stricken for lack of personal knowledge, while attached affidavits by George, Dave, and Susan Petkovich established the parties' course of dealings based on personal knowledge.

¶ 19    Defendant argued that summary judgment for itself was appropriate because the lease did not terminate as plaintiff alleged but defendant's tenancy extended to June 30, 2020. Alternatively, summary judgment for plaintiff was inappropriate because there was a genuine issue of material fact as to whether plaintiff was entitled to immediate possession of the premises "due to the ambiguity contained in the four corners of the applicable lease agreement." Defendant reiterated its claim that plaintiff's board decided to terminate the lease in May 2019 and plaintiff sent defendant a letter that month stating that plaintiff would not be renewing the lease but not providing a reason for that decision. However, the lease provided that written notice of termination by plaintiff would have to precede termination by at least one year. Also, the lease term was from July 1 to the following June 30, consistent with the school year.

¶ 20    George Petkovich, defendant's secretary/treasurer from 2006 to 2012 and president from 2012 to 2017, Dave Petkovich, defendant's director from 2009 to 2012 and secretary/treasurer thereafter, and Susan Petkovich, a member of defendant's board from 2011 onwards, averred substantially identically in support of defendant's motion. Defendant had leased the premises for over 40 years and spent money during its tenancy maintaining and improving the premises. The 2006 lease had a two-year term and a requirement of one year's notice of termination by plaintiff "to mitigate the significant burden that would be created if [defendant] and its students were forced to relocate on short notice." The lease provided for year-to-year extensions negotiated by December 31 of a lease year, and "the Parties' custom and practice was to extend the term of the

2006 Lease by one-year intervals via regular, annual lease addendums," with each lease term running from July 1 to June 30. However, rent negotiations and lease extensions "were usually not negotiated and entered into until just prior to the start of a new lease term." Moreover, some addenda were not finalized until after the new lease term had begun, as shown by the November 2018 addendum providing for an extension of the lease from July 1, 2018, to June 30, 2019.

> "[I]n recognition of the logistical difficulties involved with relocating [defendant] and all of its students in the event [plaintiff] wanted to take back possession of the Premises *** and occupy the Premises, all lease addendums following the 2006 Lease expressly incorporated the 2006 Notice Provision that required Plaintiff to give [defendant] written notice of its decision to occupy the Premises at least one year prior to taking occupancy."

Thus, "even in the context of a one-year lease extension," the parties had expectations that plaintiff would give defendant "one year's written notice that it would not extend the lease and that after the start of the one-year lease, that Defendant would have a valid lease hold for one year from the date Defendant received written notice of Plaintiff's intent to not extend its lease," and that plaintiff "could not avoid the written notice requirement and take back possession of the Premises without notice by allowing the lease to expire." Affiant George "never entered into a lease renewal with Plaintiff. Rather, starting in 2008, the 2006 Lease was extended in year-long increments via addendums and that each addendum expressly incorporated the 2006 Notice Provision." Nonetheless, plaintiff's board voted on May 7, 2019, to terminate defendant's lease, effective June 30, 2019, and plaintiff sent defendant a letter the next day, less than two months before the lease term in the 2018 addendum expired, that it "will not be renewing this lease after the termination date of June 30, 2019," and defendant should remove its property from the premises by that date.

¶ 21    Plaintiff filed a response to defendant's summary judgment motion and reply in support of its own motion, reiterating its position that the lease as amended terminated by July 2019 by its

own clear and unambiguous terms. Specifically, the lease provided that it could be renewed year-to-year with plaintiff's approval but plaintiff provided no such approval beyond the 2018 addendum. While defendant pointed to the termination provision with its one-year written notice requirement, defendant's tenancy was not terminated but merely expired. Granting defendant relief and automatically extending the lease would allow a tenant to hold over without approval of the landlord, in this case plaintiff's board. Plaintiff also argued that the lease's provision for one-year written notice of termination was superseded by the 2018 addendum, which provided (1) for one year's renewal when the 2006 lease provided for a two-year renewal, and (2) that the addendum superseded any contrary provision of the lease. "It is absolutely contrary in nature to have a year termination notice requirement when the lease itself is only to last a year." Plaintiff argued that there was no basis for the court to consider the parties' customs and practices as defendant requested. Defendant knew that plaintiff intended not to renew the lease, as shown by defendant obtaining new school space in time to open in early July 2019, as shown in turn by attached news articles to that effect. Dr. Wagner's affidavit was sufficient to support plaintiff's summary judgment motion because she had personal knowledge of the leases and addenda by reviewing them and discussing them with plaintiff's staff including the previous superintendent.

¶ 22    In August 2019, the court granted defendant summary judgment and denied plaintiff summary judgment, declaring that "defendants maintain valid possession over the premises *** until June 30, 2020, in accordance with and subject to" the 2006 lease and 2018 addendum. The order also continued all pending matters.

¶ 23                                C. Reconsideration

¶ 24    Plaintiff filed a motion to reconsider, arguing that the court had erred in applying the law and had not considered new facts. Plaintiff argued that the 2006 lease did not provide for automatic renewal but for negotiations during the lease term towards a goal of year-to-year extension with

plaintiff's approval. Based on Dr. Wagner's attached affidavit, plaintiff alleged that the November 2017 addendum extended the lease term from July 1, 2018, to June 30, 2019, and the November 2018 addendum amended other provisions but did not extend the lease term. Noting that termination and expiration of a lease are not the same, plaintiff also argued that it was not required to provide one year's written notice because that lease provision applied to termination of the lease while defendant's tenancy merely expired by the lease and addendum provisions on June 30, 2019. Moreover, defendant did have one year of notice: in September 2017, defendant sought an extension but plaintiff told defendant that there would be no extensions beyond June 30, 2019, defendant acknowledged that there would be no more extensions, and defendant sought to rent a new location before July 2019. Lastly, plaintiff argued that a one-year notice provision was consistent with the original lease with its two-year term but inconsistent with the one year term in the addendum, which provided that the addendum superseded contrary lease provisions.

¶ 25    Attached to the motion was Dr. Wagner's September 2019 affidavit that plaintiff entered into an attached June 2017 addendum extending the lease term from July 1, 2017, to June 30, 2018, that defendant in September 2017 requested a further extension in an attached email, that Dr. Wagner replied in an attached email that there would be no extension past May 2019, and that defendant acknowledged there would be no further extension. Dr. Wagner's email in fact said:

"It is a possibility. We will know more as we go through our community engagement process. I don't believe we would be in a place to extend a lease past May 2019 as we will likely not know what exactly we are doing, if anything, to [the premises] by the end of 2018 and might want to make sure we have the ability to start right something right away in June. I wish I had a more definitive answer for you."

The November 2017 addendum extended the lease term from July 2018 to June 30, 2019, and the November 2018 addendum amended the rent in light of defendant using less of the premises but

did not amend the lease term. In February 2019, representatives of defendant told Dr. Wagner that they were aware the lease would expire in June 2019 and sought an extension, which Dr. Wagner told them would not be possible. After the November 2018 addendum, plaintiff never adopted another addendum to the lease nor did it extend the lease term. Dr. Wagner averred that she read attached newspaper articles in which defendant acknowledged the end of its tenancy of the premises on June 30, 2019, and described its plans to occupy another location by July 2019.

¶ 26    Defendant responded to the reconsideration motion and moved to strike, arguing that plaintiff's purported new evidence was not newly discovered but had been available before the court ruled on the summary judgment motions, and plaintiff had not explained why it did not provide the evidence earlier. The court should therefore strike the allegedly new evidence, absent which plaintiff was merely reiterating its unsuccessful arguments on the summary judgment motions. Its only new argument was that it had given defendant one year's notice, but defendant argued that this new argument should be deemed forfeited due to plaintiff not raising it in the proceedings on the summary judgment motions. If the argument was not forfeited, it was not meritorious because Dr. Wagner's September 2017 email did not rule out the possibility of a further lease extension so it was not notice that the lease would expire or terminate in June 2019. Defendant argued that the court ruled properly on the summary judgment motions, correctly found the lease and addendum to be ambiguous, and correctly found that defendant had a valid lease on the premises until June 30, 2020, in light of the lease, addendum, and plaintiff's notice.

¶ 27    Plaintiff replied in support of its reconsideration motion, arguing that its motion was merely pointing out errors of law in the court's decision on the summary judgment motions and then pointing to facts supporting that the legal rulings were erroneous.

¶ 28    In November 2019, the court denied the reconsideration motion. The court stated that it had considered only the Petkovich affidavits. Dr. Wagner lacked personal knowledge for her

averments as she did not work for plaintiff until July 2017. It did not consider attached newspaper articles absent authentication or a proper foundation. The court granted defendant's motion to strike Dr. Wagner's September 2019 affidavit, finding that it contained facts available when the summary judgment motions were pending. It also ordered that each party was responsible for its own attorney fees, found the instant order to be final with no just reason to delay enforcement or appeal of the August 2019 order, and continued the case for status.

¶ 29    The court noted that a lease with conflicting provisions must be examined as a whole to determine the parties' intent at the time of contract formation and execution. It also noted that lease provisions are strictly construed against the lessor or drafter and that ambiguous lease language is construed in favor of the lessee. It found the 2006 lease to be ambiguous because it has contradictory terms, with a provision that the lease may be extended on a year to year basis on plaintiff's approval but another provision requiring plaintiff to give defendant written notice to terminate the lease and occupy the premises to meet plaintiff's students' needs at least one year prior to taking occupancy. As ambiguous leases are read in favor of the lessee, the court adopted defendant's interpretation that the lease ends by written one-year notice, is renewed or continued until at least December 31 of every year, and plaintiff must give a one-year notice by July 1 of any year to terminate it by the following June 30. The "record supports that lessor was required to give a one year notice because lessor did require lessee's classrooms to meet its students' needs."

¶ 30    The court found that the lease provision for negotiations by December 31 "shows intent to automatically renew or continue to negotiate a rent adjustment agreement and execute an approved addendum by" that date, with the previous rent "paid until a new addendum is executed and rent adjusted back to" July 1. The provision for plaintiff to terminate with one year's written notice if it needed space for its own students "remained in effect with each addendum." The lease term was a fiscal or school year, from July 1 to June 30, rather than a calendar year. The "2018 addendum

amended and extended the 2006 lease to 6/30/19 with all terms except the lease term to remain the same," and the terms unaffected by the addendum included the December 31 negotiation provision and the provision for termination on one year's written notice. "The court finds at the time of the 2006 lease and subsequent addendums, the parties['] intent was to evaluate their situations every school year until either party gave notice to terminate." The "one-year notice requirement by either party makes the most logical sense because neither party would want to stop or start the lease in the middle of the school year or end it abruptly in any given month." Also, plaintiff's board approving a motion to terminate the lease effective June 30, 2019, and plaintiff sending a letter to that effect the next day, "confirms the parties' intent that notice was required to terminate the lessee's continuous lease and not renewing it. The Board believed they needed to give a notice of no renewal and termination but failed to give the proper one year notice." This appeal followed.

¶ 31                                         III. ANALYSIS.

¶ 32    On appeal, plaintiff contends that the court erred in denying its reconsideration motion as defendant's tenancy expired on June 30, 2019, by the terms of the lease and in using extrinsic evidence when the lease was unambiguous. Defendant responds that the trial court did not err because defendant's tenancy was extended until June 30, 2020, by plaintiff's failure to comply with the notice provision of the lease, which was ambiguous so that the court did not err in using extrinsic evidence or in concluding as it did. In supplemental briefing, defendant contends that this appeal is moot because the central issue of possession is no longer in dispute, while plaintiff contends that it is not moot because there are issues of damages left to be decided that would be affected by this court's decision on whether the order or judgment at issue was erroneous.

¶ 33    "In order to invoke the subject-matter jurisdiction of the court, a case must present a justiciable matter," and "[m]ootness presents a question of justiciability." *Universal Metro Asian Services Ass'n v. Mahmood*, 2021 IL App (1st) 200584, ¶ 17. Indeed, a court may find a case or

- 13 -

appeal moot *sua sponte*. *People v. Dawson*, 2020 IL App (4th) 170872, ¶ 8 (citing *Hernandez v. Morris*, 39 Ill. App. 3d 783, 784 (1976)).

¶ 34    Illinois courts do not decide moot questions, render advisory opinions, review cases merely to establish precedent, or consider issues when the outcome will not be affected regardless of how the issues are decided. *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 60. An appeal is moot if an actual controversy no longer exists or if events have occurred that foreclose the reviewing court from granting effective relief. *Prospect Heights Fire Protection District v. Department of Employment Security*, 2021 IL App (1st) 182525, ¶ 23. In considering mootness, a court may take judicial notice of events outside the record. *Id*.

¶ 35    The crux of this case was possession of the premises and a determination of when the lease ended according to its terms as amended. The trial court found for defendant and against plaintiff, extending lawful possession for defendant as sought in its counterclaim and denying plaintiff's forcible entry claim for possession, when it found that defendant's tenancy under the lease was valid through June 30, 2020. However, once that date passed, this case became moot. Regardless of whether we were to decide that the lease ended on June 30, 2019, or June 30, 2020, there is no dispute that it had clearly expired by the latter date; that is, plaintiff was, and defendant was not, entitled to possession of the premises after June 30, 2020.[1] Plaintiff seeks possession of the premises and a declaration that the lease expired on June 30, 2019. However, defendant has vacated the premises, and plaintiff has come into possession of the premises, since June 30, 2020.[2]

---

[1] June 30, 2020, fell while this case was being briefed, specifically between defendant filing its appellee brief in June 2020 and plaintiff filing its reply brief in July 2020.

[2] We take judicial notice from maps, the parties' websites, and official records that plaintiff is now operating a school at the premises and that defendant is now operating its programs, including a day care center licensed by the Department of Children and Family Services, at a different location than the premises.

¶ 36    As noted above, the crux of this case has been occupancy of the premises. Plaintiff sought damages for unlawful occupancy for the first time in its reply brief, other than a prayer in its complaint for fees and costs of bringing suit, not rent. While plaintiff was clearly due rent for defendant's occupancy of the premises for the year ending June 30, 2020, that was so whether that occupancy was proper or not. As plaintiff has not claimed in its original or supplemental briefing that defendant failed to pay rent or expenses of occupancy such as utilities, we presume on this record that defendant paid rent and expenses from July 1, 2019, to June 30, 2020, pursuant to the trial court orders that its lease providing for rent and expenses continued to the latter date.

¶ 37    In supplemental briefing, plaintiff notes that the Code of Civil Procedure provides for damages of "double the yearly value of the" premises from a tenant who "willfully holds over ***
after the expiration of his or her term or terms." 735 ILCS 5/9-202 (West 2018). Plaintiff contends that it can raise such a claim on remand so that a decision of this court on plaintiff's contention of error would affect the outcome of litigation between the parties concerning the premises insofar as it would determine whether defendant willfully held over.

¶ 38    However, defendant contends that plaintiff has waived a claim for holdover damages by not raising it either in the trial court or here until its reply brief, and that plaintiff is not entitled to damages under section 9-202. As to the first point, Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) provides that "[p]oints not argued [in the appellant brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."

¶ 39    Moreover, we find that, whether or not the trial court erred in finding for defendant, plaintiff cannot recover under section 9-202. A tenant is not charged double rent under section 9-202 if he or she retained possession for colorably justifiable reasons, or in a reasonable belief that continued possession was rightful. *Wendy and William Spatz Charitable Foundation v. 2263 North Lincoln Corp.*, 2013 IL App (1st) 122076, ¶¶ 43-44. In other words, a landlord cannot claim

damages under section 9-202 if there was a good faith or *bona fide* dispute regarding the right to possession. *Id.* ¶ 44. This court has also rejected the proposition that waiting to assert an alleged right to continued possession until after a landlord has sued for possession constitutes bad faith or willfulness under section 9-202. *Id.* ¶ 45. We need not determine whether the judgment below was erroneous to determine that there was a *bona fide* or good faith dispute as to possession here so that plaintiff would not be entitled to holdover damages even if we were to reach the merits of its appeal and find for plaintiff.

¶ 40     Plaintiff also contends in supplemental briefing that defendant's counterclaim precludes this appeal from being moot. However, we consider it key that each party requested its fees and costs for bringing or defending suit but the trial court found in its final order that each party would be responsible for its own attorney fees. Especially in light of the facts that defendant's counterclaim for damages was pled in the alternative and the court granted primary relief, we do not see the counterclaim as a bar to finding this appeal moot.

¶ 41     We conclude that a declaration that the lease expired on June 30, 2019, would be merely advisory and would no longer affect any outcome. We therefore dismiss this appeal as moot.

¶ 42                                   IV. CONCLUSION.

¶ 43     Accordingly, we dismiss this appeal as moot.

¶ 44     Dismissed.